[Crim. No. 1227.   Third Appellate District.—October 15, 1932.]

THE PEOPLE, Respondent, v. LORENZO CIMAR, Appellant.

Ralph D. Paonessa and Paonessa & Oster for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

THOMPSON (R. L.), J.—The defendant was convicted of pandering in violation of the Statutes of 1911, page 9, 1 Deering's General Laws of 1931, page 819, Act 1906. The information charges that he did "wilfully and unlawfully and feloniously procure for a female person . . . a place as an inmate of a house of prostitution".

The appellant contends the verdict is not supported by the evidence for the reason that the female in question was not procured to become an inmate of a house of prostitution against her will, but upon the contrary that she voluntarily entered and remained in the house. It is also asserted the court erred in the admission of testimony and in instructing the jury regarding the law of the case.

The judgment of conviction is amply supported by the evidence in this case. It is unnecessary to recite the testimony in proof of that assertion. The defendant was acquainted with the landlady and with another inmate of a notorious house of prostitution at Marysville, called the Hollywood Rooming House. He met a seventeen year old girl by the name of Lina Limbardo who was employed in a Sacramento restaurant. After seducing her, he took her to Marysville and placed her in this house of prostitution, where she remained for more than a month promiscuously engaging in prostitution. She became an associate and partner of one of the inmates of the bawdy-house. They divided their net receipts from the business. The record leaves no doubt that Lina Limbardo was induced by the defendant to become an inmate of this house of ill-fame for the purpose of engaging in the practice of prostitution. It appears that he procured fifty dollars from her earnings on a pretense of obtaining a loan of this money. These acts constitute unlawful and felonious pandering contrary to the first provision of the statute above mentioned which declares that "Any person who shall procure a female inmate for a house of prostitution . . . shall be guilty of a felony, to-wit: pandering." This statute recites facts constituting several groups of acts incident to the practice of prostitution and to the maintenance of a house of ill-fame, which are prohibited as unlawful pandering.

Pandering is a synonym of the vulgar term "pimping" and consists of unlawfully procuring a female to

engage in gratifying the lust of other individuals as distinguished from fornication, rape or seduction. (3 Bouvier's Law Dictionary, p. 2592; 46 C. J. 1172; 74 A. L. R. 312, note.) The circumstances constituting pandering ordinarily depend upon the language of the statute under which an accused person is charged. According to the provisions of that portion of the statute under which this defendant was charged with pandering, it was unnecessary to prove that the female was procured by him by means of force or fraud to become an inmate of the house of prostitution. It was not even necessary to prove that she became an inmate of the house against her will. If, by means of his entreaty or persuasion, she was induced to become an inmate of the house of ill-fame, the requirements of the statute are fulfilled. It may be conceded the crime of pandering is not accomplished unless the accused person procures the female to become an inmate of the house for the purpose of engaging in prostitution. It may be admitted that the term "inmate", as it is used in the statute, implies that the female shall abide in the house of ill-fame for the purpose of engaging in prostitution. The female who is involved in the present case did engage in promiscuous illicit intercourse in the house of prostitution for a period of a month, after which time she was apprehended and the defendant was charged with this crime. If the conduct of the defendant assisted, induced, persuaded or encouraged the female to become an inmate of the house of ill-fame for the purpose of practicing prostitution, the crime of pandering is sufficiently established. ■ The testimony is ample to support each of these necessary elements. The record contains a conflict of evidence, but the motive for the conduct of the defendant, the character of the house and the purpose for which the female became an inmate thereof, were all matters for the determination of the jury. The loathsome practice of pandering should be discouraged by every legitimate means known to the law.

■ Error is assigned by the appellant in the admission in evidence of three letters. It is asserted they were incompetent, prejudicial and not identified as the handwriting of the defendant. The defendant was known by the name of Mori. Lina Limbardo, who is involved in this criminal proceeding, was employed in the Hollywood Rooming House of

prostitution under the assumed name of Jakie Baldwin. The first challenged letter, which was received in evidence over the objection of the defendant, was addressed to Jakie Baldwin, and was identified by her as the handwriting of the defendant. It was written to her by the defendant in response to a request for the return of fifty dollars of her money which he claimed to have borrowed. It is competent evidence tending to show that his profiting from her earnings furnished a motive for him to have procured her to become an inmate of the house of prostitution. It tended to show that he was sharing in the receipts of her illicit practice. He claimed that he merely left her in the rooming-house temporarily at his own expense. She testified that he returned after she had been there a week and that, "He asked me if I was ready to go home, and I said 'yes', and he didn't like that very well. He got sore and didn't say anything but went in the other room and talked to Bobby (her associate) and she came in there and explained how nice he was and everything, and persuaded me to stay there." There was no error in the introduction in evidence of this letter.

The second letter complained of was written by the defendant to Bobbie Meyers, an inmate of the Hollywood Rooming House of prostitution. This is the woman with whom he negotiated to persuade Jakie Baldwin to remain in the house of ill-fame. The letter was signed L. Mori. It was positively identified as his handwriting. He admitted that his real name was Squiccimori. He was known by the nickname of Mori. This letter was competent as an admission of the defendant's friendly relationship with Bobbie Meyers to corroborate the theory that he worked with her to persuade Jakie Baldwin to remain in the house of prostitution as an inmate thereof.

The last letter which was received in evidence was signed by Squiccimori, and acknowledged by him to be in his handwriting. The defendant became a witness at the trial in his own behalf. He failed to deny that these letters were written by him. They were all competent to prove that the defendant deliberately planned to procure Jakie Baldwin to become an inmate of the house of ill-fame. They tend to show the motive with which he left her at that house.

■ Finally the appellant contends the court erred in instructing the jury that in order to constitute the crime of pandering it was only necessary to prove that the defendant had *procured* Lina Limbardo to become an inmate of the bawdy-house for the purpose of prostitution. That upon the contrary it was unnecessary to prove that such procuring was accomplished by means of promises, threats, violence or fraud. In support of this assertion the appellant relies on the case of *People* v. *Burns,* 75 Cal. App. 84 [241 Pac. 935]. That case does hold that it is necessary to allege and prove that the female is induced to become an inmate of a house of prostitution by means of promises, threats, violence or some device or scheme exercised by the accused person. We are of the opinion the learned author of that decision misconstrues the language of the statute with relation to the first offense of pandering which is defined therein. The first offense which is prohibited by statute seems to have been entirely overlooked by the court in deciding the Burns case. No petition for hearing was presented to the Supreme Court in that case. The statute reads, ''Any person who shall procure a female inmate for a house of prostitution, . . . shall be guilty of a felony, to-wit: pandering.'' The term ''procure'', as it is used in the statute with relation to the crime of pandering, has a very definite and well understood meaning. ■ A procurer is one who exploits the virtue of a female by soliciting trade for a lewd and lascivious woman to gratify the lust of other persons. A procurer is an agent who promotes prostitution. (50 C. J. 628; 6 Words & Phrases, 3d series, 190; *People* v. *Roderigas,* 49 Cal. 9.) The result of soliciting patronage as the agent of a depraved woman is equally harmful to society whether the procurer carries on his loathsome trade with or without her consent. In enacting the statute against pandering, the legislature evidently intended to discourage the nefarious business of replenishing houses of prostitution with inmates. It is unnecessary for the statute to specify the various terms and conditions which may be deemed to constitute the act of procuring. The statute clearly declares that anyone who procures a female inmate for a house of prostitution is guilty of pandering. The effect of the statute would be greatly restricted if it were construed to apply only to such acts

of procuring as were accomplished by means of coercion, violence, threats, persuasion or fraud. Under the provisions of this statute, if a man accedes to the importunities of a wanton woman and finds her a place as an inmate of a bawdy-house where she practices prostitution, as her agent in this forbidden enterprise, he is just as guilty of pandering, as though he had induced her to become an inmate of the house by means of threats, violence or fraud. The crime of procuring a female for a house of prostitution is clearly made separate and distinct from the other statutory offense of inducing a female to enter such a house by means of "promises, threats, violence, or any device or scheme". The statute distinguishes these different offenses by separating them with the disjunctive preposition "or". The statute reads, "Any person who shall procure a female inmate for a house of prostitution, *or who*, by promises, threats," etc. " . . . shall be guilty of a felony, to-wit: pandering." We are therefore of the opinion the statute makes it a crime for one to procure a female to become an inmate of a house of prostitution, with or without her consent, and regardless of whether it is accomplished by means of threats, violence or fraud. The challenged instruction is therefore not erroneous.

▉ It will be observed the defendant was not charged in this case with inducing a female to become an inmate of a house of prostitution by means of threats, violence or fraud. He was merely charged with wilfully and unlawfully procuring her to become an inmate of a bawdy-house. We are of the opinion this language states a good cause of action under the first provision of the statute. There was neither a demurrer to the information nor a motion to quash the pleading. If there is any defect in pleading, proceedings or instructions, it is cured by the provisions of article VI, section 4½, of the Constitution, for there appears to have been no miscarriage of justice in this case.

The order and the judgment are affirmed.

Pullen, P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 29, 1932, and an application by appellant to have the cause heard in

the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 10, 1932, and the following opinion then rendered thereon:

THE COURT.—Petitioner's application to have the above-entitled cause heard and determined by this court after judgment in the District Court of Appeal of the Third Appellate District is denied. Anything in the opinion in the case of *People* v. *Burns,* 75 Cal. App. 84 [241 Pac. 935], contrary to the decision herein is hereby expressly disapproved.