[Crim. No. 1382.   Third Appellate District.—August 2, 1934.]

THE PEOPLE, Respondent, v. WALTER LOVELESS, Appellant.

Clifford A. Russell, Archibald M. Mull, Jr., and Ivan Sperbeck for Appellant.

U. S. Webb, Attorney-General, and Ralph H. Cowing, Deputy Attorney-General, for Respondent.

PULLEN, P. J.—Appellant, with another, was charged with robbery. Entering a plea of not guilty, he was duly tried and convicted on two counts of robbery of the first degree and sentenced to state prison. He now appeals from the order denying his motion for a new trial and from the judgment and sentence.

At the time of the perpetration of the robbery here in question appellant was then on parole from the state prison for a prior felony, and the first point urged by him in this appeal is that the trial court erred in postponing the commencement of the sentence for robbery until the completion of the term under which the parole was granted, appellant contending that the court was without authority so to do. In this appellant is in error. Section 669 of the Penal Code provides:

"When any person is convicted of two or more crimes, the judgment shall direct whether the terms of imprisonment or any of them to which he is sentenced shall run concurrently or whether the imprisonment to which he is or has been sentenced upon the second or other subsequent conviction shall commence at the termination of the first term of imprisonment to which he has been sentenced, or at the termination

of the second or subsequent term of imprisonment to which he has been sentenced, as the case may be.''

In this case defendant having been convicted of two crimes, first, the crime for which he was on parole, and, secondly, the conviction of the robbery here in question, it became the duty of the court under the section just quoted to determine whether the sentences should be served consecutively or concurrently. In *In re Daniels,* 110 Cal. App. 638 [294 Pac. 735], the court, in discussing section 669 of the Penal Code, said.

''Under the provisions of that statute, if it has any application at all to a misdemeanor case, it was the duty of the justice of the peace who pronounced judgment in the misdemeanor case to have sentenced the petitioner so that his imprisonment would commence 'at the termination of the first term of imprisonment' for the felony charge. If the justice was not aware of the fact that the prisoner was then subject to a judgment of commitment in the state prison, it would be the duty of the petitioner to inform the court of that fact. The accused may not remain silent at the time of his second sentence respecting his status as a prisoner and then claim the benefit of his own secrecy.''

Appellant cites several cases which he advances as being in support of his contention, but they were rendered prior to the amendment of section 669 of the Penal Code in 1931 and are of no assistance in the present instance.

Appellant moved also for a new trial upon the ground of newly discovered evidence, such evidence having to do with fixing the time a certain Ford coach was stored in a garage in Grass Valley.

During the trial the nightman of the garage had been called as a witness for the People, and had testified that on the night of the perpetration of the robbery he was on duty at the garage from 9 P. M. until 8 A. M. the next morning. He made up the list of cars in the garage that night, which list showed that a certain Ford coach was in the garage, but the witness could not fix the time of its arrival except as being some time between 9 o'clock P. M. and the early hours of the morning. On cross-examination he did testify, however, he thought it came in about an hour after he went on duty. He also identified one Ashton, whom the prosecution charged was the companion of appellant at the time of, and

took part in the robbery in question, as the man who drove the coach in the garage that night. Appellant in support of his application for a new trial submitted two affidavits that between the hours of 9 o'clock and 12 o'clock Ashton was with affiants in Sacramento. Appellant also submitted an affidavit of the man who appeared by the list of cars to have been the next after the coach to have stored his car that night, and he fixed the time of his arrival at about 12 o'clock.

It is apparent that the affidavits offered are not directly contradictory of the testimony of the floorman of the garage, he fixing the time of the arrival of the Ford coach at between 9 o'clock and the early hours of the morning and the affidavits placed Ashton in Sacramento at a time between 9 and 12, and the other affiant fixed the time of the arrival of his car at *about* 12 o'clock. ■ Evidence which is designed to contradict a witness is not justification of a new trial. (*People* v. *Anthony*, 56 Cal. 397; *People* v. *Weber*, 149 Cal. 325 [86 Pac. 671]; 8 Cal. Jur. 431.) Another affidavit submitted on another point was admittedly cumulative, but newly discovered evidence which is merely cumulative in character is not of itself sufficient ground for a new trial.

■ In considering a motion for new trial it must be kept in mind that such a motion is addressed to the sound legal discretion of the trial court. A clear and unmistakable abuse of such discretion must be shown before an appellate court will disturb the findings, and this is particularly true where the application is based upon the ground of newly discovered evidence. (8 Cal. Jur. 442, and cases there cited.)

Therefore it appears that since the proposed evidence submitted by the affidavits would be offered to contradict the testimony of the garageman, and which, too, as a matter of fact would not be directly contradictory thereof, the court was justified in denying the order for new trial.

■ It is next urged by appellant that the court erred in admitting certain evidence. One Dolores Bisphan, a witness called by the appellant, was asked on cross-examination whether or not her mother, Alice Bisphan, had requested Tony Belaski to be a witness for the defendant. This evidence was offered to show bias on the part of Alice Bisphan and admitted over objection. We can see no error in this testimony, but even if so it was harmless, for Alice Bisphan herself, while on the witness stand, had previously testified

that she had had a conversation with Tony Belaski and others and had asked them if they would be witnesses for the defendant.

Another citation of error is based upon a question asked of the same witness on cross-examination when the court permitted the district attorney to ask her if she had seen appellant on other occasions than that to which she had testified on direct examination and if so how often and also if she had ever seen any other man come to her mother's place with the appellant. The objection to this was that it was immaterial and not proper cross-examination, appellant claiming that on direct examination nothing was brought out as to how many times appellant had visited her mother's home nor if his associate Ashton had even been there. We find no error in the cross-examination. The witness had testified that appellant was in her mother's apartment on a certain night and when, on cross-examination, she was asked if anybody ever came to her mother's apartment with the appellant, she replied that Ashton did once. We believe it was entirely proper to go into all the circumstances surrounding the calls made by appellant at her mother's apartment. Appellant argues that the testimony and other of a similar character was adduced to show that appellant and Ashton were constantly in one another's company. We fail, however, to see where such showing is made or in what way the evidence objected to was prejudicial.

The judgment and the order are affirmed.

Thompson, J., and Plummer, J., concurred.