[Crim. No. 1601.   Third Appellate District.—April 29, 1938.]

THE PEOPLE, Respondent, v. LOUISE WRIGHT, Appellant.

Lawrence Edwards and Charles H. Epperson for Appellant.

U. S. Webb, Attorney-General, and Gordon S. Hughes, Deputy Attorney-General, for Respondent.

THOMPSON, J.—A rehearing was granted in this case for the purpose of modifying the statement of facts contained in the original opinion, of which the appellant complains. After again reviewing the record we are convinced the original opinion correctly declares the law applicable to the facts

of this case. With certain modifications the original opinion is therefore adopted as follows:

The defendant was convicted under the first count of an information charging her with pandering, contrary to the provisions of the statutes. (Stats. 1911, p. 9; 1 Deering's Gen. Laws of 1931, p. 819, Act 1906.) The information alleges that the defendant did "wilfully, unlawfully and feloniously procure for a female person, to-wit: one Esther Stephens Blanas, a place as an inmate of a house of prostitution".

The appellant contends that the verdict and judgment of commitment are not supported by the evidence, that the court erred in receiving and rejecting testimony, and in giving to the jury and refusing certain instructions. It is also inferred the first count of the information upon which the defendant was convicted fails to state facts sufficient to constitute a public offense.

■ The information states a good cause of action for the crime of pandering. (*People* v. *Cimar*, 127 Cal. App. 9 [15° Pac. (2d) 166, 16 Pac. (2d) 139].) It alleges that the defendant *procured* Esther Blanas to become an inmate of a house of prostitution. Under the statute above referred to, pandering may be accomplished in several different ways. It is said in the Cimar case, *supra*, that "if the conduct of the defendant assisted, induced, persuaded or encouraged the female to become an inmate of the house of ill-fame for the purpose of practicing prostitution, the crime of pandering is sufficiently established". The first count of the information is couched in the language of the statute and states a good cause of action.

■ The judgment and verdict are adequately supported by the evidence. We have carefully read the entire transcript of evidence, and find that every necessary element constituting the crime of pandering as alleged in the information is sufficiently supported by competent evidence. ■ A statement of the defendant, which was taken by the court reporter under the direction of the district attorney, was properly received in evidence. The court reporter testified that it was voluntarily given without promise of reward or threat of punishment. Proof of the voluntary nature of the statement was not a necessary prerequisite to its admission in evidence, since it does not constitute a confession of the defendant, but rather consists of a mere series of declara-

tions regarding the circumstances of the transaction. (8 Cal. Jur. 98, secs. 194, 195.) The defendant admitted that she operated a house of prostitution at number 130 West Lafayette Street in Stockton, to which Esther Blanas was taken as an inmate; that the defendant accompanied Gus Blanas to Sacramento in his automobile June 28th, to procure a girl for her house of prostitution; that she was then introduced to Esther, who was called "Sunny" and at the request of Gus she consented to that girl becoming an inmate of her house of ill-fame. Two weeks later Gus Blanas took Esther to Reno where she said they were married. The defendant's statement with relation to her participation in procuring Esther to become an inmate of her house, reads in part:

"Q. What sort of business do you conduct at that address? A. Prostitution. Q. Are you, yourself, actually engaged in that business? A. Well, I have been; I haven't lately. . . . Q. During the past month what part did you play in the management at that place of business? A. I was there by myself. Q. You were working yourself? A. Yes. Q. Did you employ any other girls to work for you in the last month? A. In June, you mean? Q. Yes. A. Well, yes, for about a week and a half, something like that, the latter part of June. . . . Q. Why did you go to Sacramento with Gus Blanas? A. I went over there to see if I could find somebody to come over to the house to work. . . . Q. Did you have any conversation with either the girl [Esther] or Gus Blanas with respect to the prospect of her working for you at a future date? A. I did with Gus. . . . He asked me if it would be all right if he brought a girl to the house to work. I said *I guess it would be* if she was of age. . . . Q. You received money earned by this girl 'Sunny' in acts of prostitution at that place of yours at 130 West Lafayette Street each night as such money was turned over to you by your step-mother, Mabel? A. Yes."

Regarding the defendant's knowledge that Esther became an inmate of her house of ill-fame with her consent, it appears that Gus Blanas in company with Irene, another prospective inmate of the house, and Mabel Massmedsu, went with Esther to the house where the defendant roomed to obtain her approval of placing Esther in the house of prostitution. The defendant stated in that regard:

"Q. For what purpose did they come there? A. To bring the girls there. I guess to tell me that they were going to

work. . . . Q. They wanted you to see if she looked like a proper girl to be there? A. Yes. . . . Q. Gus's arrangements were made between himself and you, not with Mabel, isn't that correct, isn't that the reason they all came to your house? A. In one way, yes, but in another way, no. He had talked to Mabel first about it and Mabel asked me about it."

The defendant testified she had given Mabel Massmedsu, her stepmother, full authority to manage and operate her house of prostitution. When Esther was first brought from Sacramento to Stockton to become an inmate of the house, she was taken to Mabel for approval. Esther testified in that regard:

"Q. You had no conversation with her? A. No, but later I,—later my husband told me that that introduction was to see if I would do."

Then, Esther was taken with the group to the defendant for her personal approval, as the above-quoted evidence clearly indicates. Esther testified that they met the defendant, who was called "Teena"; that she did not personally talk with her, but that the defendant did say to her associate, Irene, that it would be all right for them to become inmates of the house. Esther testified in that regard: "She [the defendant] answered Irene—Irene's question if it would be all right for us to work, *and she said it was all right.*"

Regarding the instructions which were given to Esther the following question was propounded to the defendant: "Who taught this girl 'Sunny', Mrs. Gus Blanas, the ways of the craft?" To this inquiry, the defendant replied: "I guess she [Mabel] did. *One night I happened to be up there* and she had been told before."

The record contains conflicting testimony, but the foregoing evidence, with the reasonable inferences which may be drawn therefrom, warranted the jury in finding the defendant guilty of procuring the girl, Esther, to become an inmate of her house of ill-fame for prostitution purposes.

It is true that the defendant talked with Gus Blanas and with her stepmother, Mabel Massmedsu, who was actively managing the business, regarding the admission of the girl to her house. It may be true that the plan of persuading Esther to become an inmate of the house originated with Gus Blanas, and that it was approved by Mabel, but it was the defendant's business. She actively participated in procuring

the girl to become an inmate of her house of ill-fame. She took from her one-half of all the money she earned from practicing prostitution. There is no doubt the defendant procured Esther to become an inmate of her house of ill-fame for the purpose of profiting from her practice of prostitution therein. Certainly the defendant "encouraged" the girl to become an inmate of her house and to practice prostitution there.

There is no merit in the appellant's inference that the evidence merely shows that Esther was induced to become an inmate of the house "to work" therein as a domestic servant, only. It is true that the defendant went to Sacramento to meet the girl to determine whether she would be suitable "to work" in the house of prostitution. The evidence is undisputed that she practiced prostitution therein. There is no evidence that she ever performed any other kind of work in that house. Reading the statement of the defendant which was received in evidence, one is impressed with the fact that the only purpose on the part of the defendant in inducing the girl to enter the house was to profit from her practice of prostitution at that place. At least that is a reasonable inference to be drawn from the evidence. It was the sole province· of the jury to determine from all of the evidence adduced at the trial whether Esther was procured by the defendant to become an inmate of her house of ill-fame for the purpose of practicing prostitution or merely to work there as a domestic servant. Indeed, in spite of the fact that Mabel, the manager of the house, testified she did not know that Esther practiced prostitution in the house, and that the defendant very carefully insisted that she went with Gus to Sacramento to get a girl "to work for her", the appellant's counsel on petition for rehearing conceded that Esther was taken into the house to practice prostitution. They do, however, insist that the defendant did not assist in procuring her for that purpose. These were questions for the determination of the jury. With their conclusion in that regard we may not interfere since it is supported by substantial evidence.

The court correctly instructed the jury that the gist of the crime prohibited by the statute in question was to prevent pandering, and that the term "inmate", as it is used in the statute, means that the female must become an inmate in the house *for the purpose of engaging in prostitution*. It

follows that the verdict of guilty, which was returned by the jury, necessarily implies that it determined that the defendant procured the girl to become an inmate of her house for the purpose of inducing her to practice prostitution therein, and not to work there as a mere domestic servant.

■ It is contended the statement of the defendant, which was received in evidence, should be discredited because it was taken by the district attorney without first informing her that it might be used against her at the trial, and before she had an opportunity to talk with her attorneys. It is true that at the trial she contradicted many incriminating admissions which were contained in the statement. The record shows that the statement was made in the presence of District Attorney Clowdsley and Detective Sergeant Parker. The court reporter, who took the statement in shorthand, and transcribed it into typewriting, testified that it was taken with ''no promises or threats; it was a free and voluntary statement''. There is no evidence to the contrary. When it was offered in evidence, the objection thereto was limited to its application to counts two and four of the information, both of which were subsequently dismissed. Mr. Edwards, attorney for the defendant, said in that regard: ''Object to it as to Counts Two and Four. . . . It is incompetent, irrelevant and immaterial, not a proper foundation laid *against those counts.*'' The objection was specifically limited to the application of the statement to counts two and four, which were dismissed. The statement was voluntary and competent. The objection was properly overruled.

It was the sole province of the jury to determine whether the admissions of the defendant in her statement were true, or whether the contradictory evidence which she gave at the trial conformed to the facts with respect to controverted issues. Her statement supports the conclusion that she personally participated in procuring Esther to become an inmate of her house of ill-fame for prostitution purposes.

■ It was not prejudicial error to have permitted the prosecutrix to testify over the objection of the defendant that she was seventeen years of age. It is immaterial what the age of a female is in order to constitute the crime of procuring her to become an inmate of a house of prostitution. Under the statute it is unlawful to procure a female to become an inmate of such a house, regardless of her age. The evidence

shows that the defendant said it would be all right to take her into that house "if she was of age". It also shows that Mabel informed the defendant that Esther told her she was twenty-two years of age. The evidence of her age is harmless. The ruling in that regard is not reversible error.

It was not error for the court to strike certain evidence from the record and to instruct the jury to disregard an answer given by the prosecuting witness in reply to a leading and suggestive question propounded on cross-examination by the defense, as follows:

"As a matter of fact . . . you were doing just what Gus told you [do you] . . . ? A. Yes."

This question and answer might properly have been left in the record as tending to show whether the defendant procured or encouraged her to become an inmate of the house. But the evidence was cumulative, and, under the statute, even if she did enter the house in accordance with her husband's desire, the evidence conclusively shows that the defendant at least encouraged and abetted her action in that respect. Regardless of the influence of her husband, the defendant was still guilty as a principal in the transaction. The ruling was harmless. It was not reversible error.

For the same reason it was not reversible error for the court to have subsequently sustained an objection to a similar question propounded to the same witness by the attorney for the defendant.

It was not error for the court to overrule an objection of the defendant to an impeaching question propounded to an adverse witness, Mabel Massmedsu, who was called by the prosecution. The witness was clearly adverse and unreliable. In overruling the objection the court said, "Apparently he [the district attorney] is surprised at her testimony." It is a principle too well established to require citations, that a party who is taken by surprise in the testimony of a witness produced by him may be permitted to impeach the witness by proof of inconsistent statements which were made by him at another time and place. (Sec. 2049, Code Civ. Proc.)

There is no merit in the appellant's contention that the foundation for her impeachment was not first laid. The very character of her testimony clearly shows that she was adverse to the prosecution. In spite of the fact that the defendant asserted that Mabel was the manager in control of her house, Mabel testified that she acted as a mere chamber-

maid, and that she did not know Esther practiced prostitution there. The court had a right to assume the district attorney would not have called her as a witness if he had expected her to so testify. The trial judge clearly saw from her conduct on the stand and from her manner of testifying that she was an adverse witness and that the prosecution had been taken by surprise in her testimony. Moreover, the objection to that impeaching evidence failed to assign the lack of proof of a foundation therefor. All that was said by Mr. Edwards was: ''I will object on the ground that obviously it is an attempt to impeach his own witness.''

The rule is well established that when a party is surprised by unfavorable testimony given by a witness whom he has produced, such witness may be interrogated regarding previous inconsistent statements which he has made. (Sec. 2049, Code Civ. Proc.; *People* v. *Crawford,* 24 Cal. App. 396, 404 [141 Pac. 824] ; 74 A. L. R. 1042, note.) ▮ The general objection that impeaching evidence is incompetent, irrelevant and immaterial, or that it is a mere attempt to impeach his own witness, is insufficient upon which to raise, for the first time on appeal, the failure to properly lay the foundation for the introduction of that evidence. (*People* v. *Watts,* 198 Cal. 776, 791 [247 Pac. 884] ; *People* v. *Cotton,* 117 Cal. App. 469 [4 Pac. (2d) 247] ; 8 Cal. Jur. 504, sec. 518; 2 Cal. Jur. 273, sec. 86 ; 3 Am. Jur., p. 94, secs. 346, 347.)

The ruling admitting evidence of contradictory statements previously made by an adverse witness was neither erroneous nor can it be raised for the first time on appeal. That objection was waived by failure to specify the particular ground relied upon.

▮ It was not error to instruct the jury that the offense of pandering may be accomplished even though the accused person may procure the female to become an inmate of a house of prostitution by means of negotiations therefor through a third person. (*People* v. *Torres,* 193 Cal. 730 [227 Pac. 177].) This instruction was properly given. One may persuade, encourage or procure another to perform a criminal act even though the negotiations therefor are conducted through an agent or representative. While the evidence shows that the defendant personally went to Sacramento to see Esther and consented to her becoming an inmate in her house of ill-fame it also shows that defendant talked about the subject with Gus Blanas and with her manager of the

business, Mabel Massmedsu. It may reasonably be said her negotiations to admit the girl to her house were partly conducted through those individuals, but that fact rendered the defendant nonetheless guilty as a principal in the crime.

The jury was instructed that ''pandering consists of unlawfully procuring a female to engage in gratifying the lust of other individuals''. The jury was then told it must acquit the defendant unless it appeared that she procured Esther Blanas to become an inmate of her house of ill-fame with the intention of encouraging and enticing her to practice prostitution therein. Assuming that the statute is violated only by procuring a female to become an inmate of a house of ill-fame to practice prostitution therein, which we believe is the spirit of the law, the challenged instruction was properly given to the jury. If that is not the correct construction of the statute, then the instruction was more favorable to the defendant than she was entitled to have given, and she may therefore not complain of that fact. The jury was plainly told that the defendant could not be convicted unless it appeared that she had procured the girl to become an inmate of her house of ill-fame with the intention of inducing or encouraging her to practice prostitution therein. There is no doubt that the girl did practice prostitution in that house; and that the defendant appropriated one-half of the money the girl earned in that manner. There is therefore evidence that she procured her for that purpose.

It did not constitute error for the court to refuse to give two instructions offered by the defense regarding the subject of aiding and abetting the commission of a crime. That subject was adequately covered by another instruction which was given to the jury.

Nor was it prejudicial error to refuse to give the other instructions offered by the defense, which refusal is complained of. They contain no essential element of the crime which is not covered by other instructions which were given in the court's charge. The court very fully and fairly instructed the jury on every necessary element of the crime with which the defendant was charged. Moreover, from a careful reading of the entire record it is apparent that the verdict and judgment which were rendered in this case do not constitute a miscarriage of justice. On the merits of the case, without doubt, the defendant was properly convicted.

■ The defendant was not prejudiced by the filing of a second amended information on the morning of the first day of trial, after the jury was impaneled, which merely changed the language of the second and fourth counts thereof, with respect to separate charges of conspiracy to commit the offense of pandering. By leave of court the second amended information was filed after the jury had been impaneled and before any evidence was adduced. It does not appear the defendant objected to filing that amended pleading. The amended information did not change the language of the first count, which is the only charge of which she was convicted. At the close of the prosecution's evidence, upon motion of the defendant, the second and fourth counts of the information, which were the only ones changed in any manner by the challenged amendment, were dismissed. In its charge to the jury, the court specifically directed it as follows:

"You are instructed that the court has dismissed counts 2 and 4 of the information on file against the defendant charging conspiracy to commit the crime of pandering, and you are, therefore, to disregard and give no consideration to said counts 2 and 4 charging conspiracy to commit the crime of pandering."

The jury acquitted the defendant of count 3 of the information. She was convicted of count 1, only. That count was not changed by the amendment in question. The defendant was therefore not prejudiced by the amendment.

■ At any stage of the proceedings in a criminal case the court may authorize an amendment of an information to be filed to supply any defect or insufficiency thereof, which does not result in charging an offense which is not disclosed by the evidence adduced at the preliminary examination, and when the substantial rights of the defendant are not thereby prejudiced. (Sec. 1008, Pen. Code; 14 Cal. Jur. 91, secs. 68, 69; *People* v. *Milligan,* 77 Cal. App. 745 [247 Pac. 580].) In the case last cited an amendment of the information was filed by leave of court, over the objection of the defendant, after the evidence was completely closed. We are unable to perceive how the defendant could possibly be prejudiced by the amendment which was filed, under the circumstances of this case.

■ It is contended that it constitutes prejudicial error for the court to have permitted the case to go to the jury

after the two counts of the indictment with respect to the charges of conspiracy had been dismissed, without striking from the record all the evidence regarding conspiracy. That procedure was not erroneous or prejudicial. There was no motion on the part of the defendant to strike out any such evidence. The court was directed to no such alleged prejudicial evidence. We are not now pointed to any evidence in the record which appears to be incompetent or prejudicial. All of the challenged evidence to which our attention is now directed appears to be competent as tending to show the intent and purpose of the defendant to have procured Esther Blanas to become an inmate of her house of ill-fame for the purpose of unlawfully practicing prostitution therein. If there are circumstances which do not tend to prove those essential facts they are trivial and harmless. Moreover, the court by clear inference instructed the jury, as we have previously stated, that it should not consider such evidence of conspiracy, and, on the contrary that it should disregard entirely the charges of conspiracy.

For the reasons heretofore assigned it was not error for the court to refuse to give to the jury the instruction regarding the alleged absence of evidence with respect to conspiracy.

The judgment is affirmed.

Plummer, J., and Pullen, P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 26, 1938.