[Crim. No. 527. Fourth Appellate District.—January 11, 1940.]

THE PEOPLE, Respondent, v. SAM SNYDER, Appellant.

Frank Curran and Harry L. Meyers for Appellant.

Earl Warren, Attorney-General, and Eugene M. Elson, Deputy Attorney-General, for Respondent.

GRIFFIN, J.—Appellant was charged in an information in count one with the violation of Act No. 1906, subdivision 1, General Laws (Stats. 1911, p. 9), that on January 16, 1937, in Fresno County, he "procured a female person for a house of prostitution, and by promises induced, . . . a female person to become an inmate of a house of prostitution". In count two he was charged with the violation of the same statute in that on March 20, 1939, he "procured a female person as an inmate for a house of prostitution, and induced, persuaded and encouraged a female person to become an inmate of a house of prostitution, and by promises induced, persuaded and encouraged an inmate of a house of prostitution to remain in such house of prostitution as an inmate therein". In count four he was charged with the violation of the same statute in that on March 23, 1939, he "procured a female inmate for a house of prostitution". Appellant was likewise charged in another information with the violation of the same section in that on February 1, 1939, he being a male person and then and there "knowing that a female person or persons to be a prostitute, derived support and maintenance, in part, from the earnings of such prostitute."

A plea of not guilty was entered as to each count in the informations. Upon stipulation both of the actions were consolidated for trial which was had by a jury, resulting in a verdict of guilty on all counts above enumerated. Motions for new trial were made and denied. Notice of appeal was thereupon given from the orders denying the motions for new trial and from the judgment.

Briefly, the grounds of appeal are: (1) Alleged insufficiency of the evidence to support the judgment on each count and in each case. (2) Alleged error of the court in instructing the jury. (3) Alleged error of the court in denying the motions for new trial.

Though the girls were not named in the information, count one obviously had to do with one Carmen Roberts, also referred to as Carmen Lopez, as announced by the district attorney in his opening statement to the jury. This girl, according to the evidence, came to Coalinga to obtain a position

as a waitress, where she met the appellant and told him the object of her visit. He stated that there was no chance for her to obtain such a position but that he knew of a place where they wanted a girl and told her to go to the Northern Rooms. The evidence is undisputed that appellant at all times knew that the Northern Rooms was a house of prostitution and that any girl working in the Northern Rooms worked therein as a prostitute. The evidence discloses that later that evening the appellant went to the establishment and suggested to Carmen Roberts that she act as a prostitute and when she stated that she had never acted as a prostitute and did not want to do so, he answered: "Why, there is nothing to it. All the girls make money like that. It is easy living." She stated that she was distressed financially at the time and did not have any place to go and so she "just took a chance". She thereafter, for three months, worked in the house as a prostitute. During that period of time appellant was around the establishment. He ate and slept there. She took orders from appellant and he told her that if any customer gave her a tip she was supposed to take the tip and the money and put it in a box. When money was taken from a customer it was placed in a little box with the name of the girl who had taken it. Appellant had access to the box and at times the girls had to wait for their money until he arrived. On a few occasions she saw appellant take the money out of the box and put it in his pocket.

 Count one of the information alleged that appellant *"procured a female person for a house of prostitution,* and *by promises induced, persuaded and encouraged a female person to become an inmate of a house of prostitution"*. (Italics ours.) Appellant cites *People* v. *Burns,* 75 Cal. App. 84 [241 Pac. 935], and argues that it has not been made a crime merely to cause, or to induce, or to persuade, or to encourage a female to become or to remain an inmate of a house of prostitution, but that an additional fact has been made a prerequisite, namely, some one or more of the means named in the statute, i. e., a promise, threat, violence, or some device or scheme whereby the female was thus caused, induced, persuaded, or encouraged to become or remain such inmate. The case of *People* v. *Cimar,* 127 Cal. App. 9 [15 Pac. (2d) 166, 16 Pac. (2d) 139], is quite applicable to the facts in the instant case and disposes of this argument.

There the defendant was charged only with procuring "for a female person . . . a place as an inmate of a house of prostitution" and the court, after sustaining the charge, said that "anything in the opinion in the case of *People* v. *Burns, supra,* contrary to the decision herein is hereby expressly disapproved".

It is quite apparent that two distinct offenses are alleged in count one, namely, procuring a female person for an inmate of a house of prostitution, and by promises inducing, persuading and encouraging a female person to become an inmate of a house of prostitution. Pleading offenses in such manner, in the absence of demurrer, has been upheld. (*People* v. *Rosenbloom,* 119 Cal. App. (Supp.) 759 [2 Pac. (2d) 228]; *People* v. *Horiuchi,* 114 Cal. App. 415 [300 Pac. 457]; sec. 1004, Pen. Code; *People* v. *Welton,* 190 Cal. 236 [211 Pac. 802]; *People* v. *Nahhas,* 121 Cal. App. 428 [9 Pac. (2d) 278].)

The information is supported by proof which shows the commission of the first of the series of acts charged. Appellant cannot now claim that he has been prejudiced by a failure to separate the charges into separate counts. There is only one penalty to be imposed thereunder. (*People* v. *Steelik,* 187 Cal. 361, 370 [203 Pac. 78].) The case, as to this count, was tried on the theory that appellant procured Carmen Roberts as an inmate of a house of prostitution and without further recitation of detailed facts, the evidence fully supports the theory on which the case was tried. (*People* v. *Cimar, supra; People* v. *Mead,* 145 Cal. 500, 502 [78 Pac. 1047]; *People* v. *Pryor,* 17 Cal. App. (2d) 147, 150 [61 Pac. (2d) 773]; *People* v. *Beesly,* 119 Cal. App. 82, 87 [6 Pac. (2d) 114, 970].)

As to count two, the evidence indicates that one Tanksley testified that he knew a Dorothy Lewis and first met her about March 20, 1939, in Los Angeles; that he took her to Avenal, California, and there she and Tanksley saw appellant and Lucille Newby. When Dorothy Lewis was introduced to appellant he talked with her about working "there". Tanksley then left and appellant and Lucille Newby took Miss Lewis to Coalinga where she went to work as a prostitute. On the way to Avenal, Tanksley stopped at Coalinga and telephoned to the Northern Rooms and tried to talk to appellant and found that he was not there but that he had gone to Avenal. He then drove to Avenal be-

cause appellant had told him to bring the girl and turn her over to him.

Appellant offered the same argument, with one exception, in respect to count two, as above related in reference to count one. The same answer to the argument as there given is applicable here. ■ It is also claimed that the witness Tanksley was an accomplice of appellant and that therefore his testimony should be corroborated under section 1111 of the Penal Code. The evidence clearly establishes facts and circumstances which, when considered together, sufficiently corroborate the testimony of the claimed accomplice. It is clear that the evidence supports the first offense charged in count two of the information for, as stated by the witness Tanksley, the appellant told him to bring Dorothy Lewis to him (appellant) and turn her over to him, which Tanksley did, and it is undisputed that Dorothy Lewis subsequently worked in the Northern Rooms as a prostitute. It is thus clear that appellant at least aided and assisted in procuring Dorothy Lewis, a female person, as an inmate for a house of prostitution. The testimony introduced on the part of the prosecution and just referred to, taken in connection with appellant's undisputed connection with the Northern Rooms, prompted the jury to draw the inference and conclusion that appellant was the procuring cause of Dorothy Lewis becoming an inmate of said house of prostitution. (*People* v. *Cimar, supra; People* v. *Marron,* 140 Cal. App. 432 [35 Pac. (2d) 610].) The evidence thus being sufficient to sustain the judgment as to count two, it becomes unnecessary to discuss the remainder of the charges alleged in that count.

■ In connection with count four, appellant argues that the evidence at the most simply shows an attempt to commit the crime of pandering. That count charges that appellant ''procured a female inmate for a house of prostitution''. The evidence shows unquestionably, if the jury saw fit to believe it, that appellant procured Tommy Lou Williams to come from Los Angeles to Coalinga for the purpose of acting in the Northern Rooms as a prostitute; that she went to the Northern Rooms to engage in such occupation, submitted to a clinical examination and as a consequence of the results of said examination never went to work in said house as a prostitute. The fact that she did not work

in said house as a prostitute in no way lessened the culpability of the appellant.

In *People* v. *Hirsch*, 21 Cal. App. 737 [132 Pac. 1062], the woman whom the defendant in that case was charged with having procured as an inmate for a house of prostitution was received in said house with the consent of the keeper, allowed a room there in which she stayed. Her purpose in going to the house was to engage in the calling of a prostitute. The woman in that case was, as stated by the court, "at least received and accepted into the house as an inmate, to ply the calling of a prostitute upon condition subsequent that she should register with the police department and pass the clinic". Although it is contended by appellant that Miss Williams occupied a room in the building not devoted to the purposes of prostitution, and that she could not be said to be occupying a house of prostitution, under the authority of the foregoing case, taken in connection with the charge made and the evidence introduced in support thereof, we are convinced that the evidence sufficiently supports the verdict of the jury.

Finally, in the remaining charge, that of deriving support and maintenance, in part, from the earnings of prostitutes, the evidence is overwhelming that the girls received only one-half of their earnings and tips which were placed in a box as heretofore described and that time and again appellant took from the prostitutes this money, or that he took money from the box in Lucille Newby's room wherein money received by the prostitutes for plying their trade was placed. The evidence is undisputed that the appellant lived in the building in which the Northern Rooms was situated and that he ate his meals there; that his clothing was kept in the same room occupied by Lucille Newby, the keeper of the Northern Rooms. There is, of course, no question but that the Northern Rooms were maintained from the earnings of the prostitutes engaged therein. Appellant certainly, in part, derived his support and maintenance from the earnings of the prostitutes, which is the very crime denounced by the statute. Appellant claims that he paid for what he received. However, it was proper for the jury to consider, in the light of all the evidence and to draw the inference therefrom, that appellant did not in fact pay for his room and meals. The evidence of the prosecution showed

appellant to be the one who gave orders at the establishment. There is direct evidence in the case that appellant owned the Northern Rooms. From a reading of the entire record there is sufficient evidence, if believed by the jury, to support the judgment of conviction as to this charge.

Appellant next complains of a certain instruction given by the court in defining circumstantial evidence as "proof of a chain of circumstances pointing sufficiently *strongly* to the commission of a crime of the defendant". Appellant has failed to comply with rule VIII, section 3, of the Rules for the Supreme Court and District Courts of Appeal, by not printing in full in appellant's brief all of the instruction or other instructions given bearing upon that subject. (*People* v. *Myrick*, 112 Cal. App. 117 [296 Pac. 320].) However, the portion complained of was but a part of the usual stock form instruction used in defining circumstantial evidence. The complaint has little, if any, merit.

Appellant's motions for new trial are predicated upon claimed cumulative and newly discovered evidence tending to impeach the testimony of witnesses who testified at the trial. His own statement in his opening brief is a fair summary of the affidavits presented with the motions for new trial and dissipates their merit and destroys their character of legitimacy. The statement is as follows: "It must be admitted that much of the newly discovered evidence set forth in the affidavits on motion for new trial was cumulative of evidence produced at the trial and could have been obtained before the trial as well as after, if defendant's counsel had foreseen that cumulative evidence on the points involved would have any effect on the outcome of the case." Newly discovered evidence which is merely impeaching in character is not ground for a new trial nor is cumulative evidence "newly discovered evidence". (*People* v. *Ong Git*, 23 Cal. App. 148 [137 Pac. 283, 284]; *People* v. *McCurdy*, 68 Cal. 576 [10 Pac. (2d) 207]; *People* v. *Goldenson*, 76 Cal. 328 [19 Pac. 161]; *People* v. *Grider*, 13 Cal. App. 703 [110 Pac. 586]; *People* v. *Loveless*, 140 Cal. App. 291 [35 Pac. (2d) 574]; *People* v. *James*, 24 Cal. App. (2d) 616 [75 Pac. (2d) 633]; *People* v. *Tallmadge*, 114 Cal. 427 [46 Pac. 282].) We see no abuse of discretion by the trial court in denying the motions. The evidence fully justifies the verdict of the jury.

The judgment and orders from which this appeal has been perfected are affirmed.

Barnard, P. J., and Marks, J., concurred.