[Crim. No. 1979.    Third Dist.    Apr. 30, 1947.]

THE PEOPLE, Respondent, v. ELGIN S. YANKEE, Appellant.

Arthur De Beau Carr for Appellant.

Fred N. Howser, Attorney General, and Charles Johnson, Deputy Attorney General, for Respondent.

THOMPSON, Acting P. J.—The defendant was convicted by a jury of an attempt to commit robbery by means of force and fear. He was found guilty on the theory that he aided and abetted John Eugene Sankey in a futile attempt to rob the cashier in the box office of the Alhambra Theatre in Sacramento on February 19, 1946, by means of threats, and the use of an imitation revolver. The robber was prevented by interference of the bystanders from accomplishing his purpose, and he fled in the automobile of the defendant. The evidence indicates that the defendant drove his car at the time of the attempted theft. A motion for new trial, on the ground of newly discovered evidence, was denied. From the judgment and order denying a new trial the defendant has appealed.

It is contended that the judgment is not supported by the evidence, and that the court erred in denying the motion for new trial.

The defendant and John Eugene Sankey were friends and associates. Each of them had been previously convicted of felonies. They served sentences together in San Quentin. The defendant, who was a married man, lived in Sacramento. He owned the black Chrysler automobile which was used in the attempt to rob the Alhambra Theatre office. The license number of that machine was 3-K-427. Sankey was in Sacramento on the day of the attempted robbery. The defendant admitted that he met him that morning. The defendant was often called by his friends, "Yank," which was an abbreviation of his surname.

Mr. and Mrs. Harold Christensen drove their automobile to the Alhambra Theatre on the evening of February 19th for the purpose of attending a picture play. They arrived about 9:30 p. m. As they approached the entrance to the parking lot on the north side of the building, their course was obstructed by a "black shiny car," from which a man stepped and walked ahead of them to the box office. The black machine then proceeded north and thence around the block.

After parking their car, the Christensens went to the box office to purchase their tickets. When they arrived they found the man who had just emerged from the black car standing in front of them at the office window. They saw his features and recognized him. The Christensens testified that there was an unusual commotion going on at the office window, but they did not realize just what was happening. With some impatient expression, Mr. Christensen pushed the man aside so that he could purchase his tickets. The man turned about and faced Christensen and said, "O.K., O.K." Miss Betty Krause, who was then in charge of the ticket office, was very much excited. She was hysterical and cried. She testified that the man appeared at the window and demanded of her the cash on hand, saying, "O.K. Sister, let me have it. . . . I am not kidding, Sister." At the same time he flourished what appeared to be a revolver. He reached into the window and "knocked over the top of the ticket machine." William Glackin, the manager of the theater, hearing the disturbance at the office, rushed from the building and asked what was going on there. Miss Krause replied that "she was being robbed." In the meantime the man suddenly fled. He ran into the garden at the south side of the building. Mr. Glackin was informed of the direction in which he ran, and immediately pursued him. Miss Krause at once phoned for the police officers, who soon arrived.

Mr. Glackin followed the thief through the adjoining garden to the street between the theater and the firehouse. He saw the man leaning against a pillar at the corner of the firehouse. Glackin approached him cautiously for fear he was armed with a revolver. He motioned to a fireman, who stood some distance away, to help him. But he failed to do so because he did not realize the nature of the appeal. Glackin, however, questioned the man who evaded his inquiries. Suddenly the thief saw his "black car" approaching on that side of the street and holloed at the driver, "Hey, Yank, Yank." He started to run toward the machine, but Glackin seized him by the shoulder. The thief stumbled, but he turned around and shoved Glackin backward and ran to the car. Mr. Glackin testified in that regard, "He [the thief] whirled around, which broke me loose,—as he did he came all the way round with both hands and knocked me back, and he went forward and made a run for the car, and this car started to move a little bit,—he grabbed for the right hand

side of the car, the front door opened, and he got in and went on.'' As the machine drove away, Mr. Glackin saw that its license number was 3-K-427, which is the same as the defendant's license number. When the police officers arrived, they were told the number of the machine in which the robber escaped, and promptly ascertained that the car belonged to the defendant. They also located his residence, and went directly to his home, where they found the machine parked, and observed that the engine was still warm. The defendant was at home.

■■■ The officers critically questioned the defendant, and learned of his association with Sankey. But he denied having seen Sankey since that morning, and denied that he had accompanied Sankey or any person to the Alhambra Theatre that evening  He asserted that his car had not been out of his personal possession that night, and explained that he had just returned from visiting a woman friend in Sacramento. Sankey disappeared. He has not been apprehended. In a later interview the defendant changed his story regarding the use of his car that night. He then told the officers that he met a carpenter by the name of Joe Evans about 8 o'clock that evening and loaned him the machine to take his woman friend home; that he was gone only one-half or three-quarters of an hour when the man returned the vehicle to him at the Clunie Hotel. The defendant said he had just returned home when the officers arrived. He admitted that Evans was a mere casual acquaintance, and that he did not know where he lived. They were unable to locate any man by the name of Joe Evans. The explanation which the defendant made, to account for his change of stories regarding the use of his machine that night, was that he first declared it had not been out of his possession because he feared his friend Evans might get into trouble if his association with his woman friend became known. The jurors were entitled to conclude, as they evidently did, that Evans was just a fictitious character created by the fertile mind of the defendant to account for the fact that the thief was actually seen to enter his automobile when he fled from the scene of the attempted theft. The contradictory stories which were related by the defendant, together with evidence of his prior conviction of other felonies, warranted the jury in assuming that he had been successfully impeached, and in discrediting his testimony at the trial.

After the escape of the thief from the theater, a plastic imitation revolver was found in those grounds. Assuming that he did not use a genuine revolver in his attempt to rob the box office, that fact is immaterial. The toy revolver was intended to serve the purpose of a real revolver, and it evidently had that effect. The thief nevertheless used force and fear in an effort to commit the crime.

The identity of the thief, an ex-convict, John Eugene Sankey, was fully established by several witnesses who saw him at the theater, and subsequently recognized him from photographs which were exhibited to them. The "black shiny car" from which the thief emerged at the theater and into which he sprang when he fled from the scene, was definitely recognized and identified by witnesses as the machine, with license number 3-K-427, which belonged to the defendant. There is no doubt it was the same machine which was used in the attempt to rob the Alhambra Theatre box office on that occasion.

The important question to be determined in this case is whether there is satisfactory evidence showing that the defendant's machine was actually driven by him, instead of by Evans or someone else, when the crime was attempted. In passing upon that question on appeal this court has not the same discretion of weighing the evidence and determining the sufficiency thereof or the credibility of witnesses that the jury possesses. When there is a conflict of evidence on an essential issue, this court is bound by the determination of the jury. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778] ; *People* v. *Smith,* 35 Cal.App.2d 73, 76 [94 P.2d 633] ; 8 Cal.Jur. 587, § 581.)

In this case it appears that the defendant and John Eugene Sankey were associates and friends. Sankey was in communication with the defendant the morning of the attempted robbery. Sankey rode in the defendant's automobile to and from the theater the night of the attempted crime; the defendant was commonly called "Yank," which was an abbreviation of his real name; when the thief fled from the theater he recognized the machine and hailed the defendant by name, saying, "Hey, Yank, Yank." The defendant deliberately told the officers conflicting stories regarding the very material question as to who actually drove the car when the thief fled from the scene of the crime. Those facts and other circum-

stances of the case furnish adequate evidence to support the verdict and judgment in this case. We have no doubt the defendant actually drove his car to and from the theater in aid of Sankey's attempt to rob the Alhambra Theatre box office.

We may not interfere with the trial court's discretion in denying the motion for new trial on the ground of newly discovered evidence. The alleged newly discovered evidence was merely for the purpose of attempting to impeach a witness who testified positively at the trial that he heard the thief call to the driver of the passing automobile in which he escaped, "Hey, Yank, Yank." The defendant's attorney merely averred in his affidavit for new trial that he *"believed* that the original police report showed that the testimony of said witness Glackin was not in accord with previous statements made to the police officers." Mr. Glackin, the manager of the theater, testified positively at the trial that the thief holloed at the driver of the car, "Hey, Yank, Yank." On cross-examination he was asked if he had not told the police officers that the thief said " 'Hank' or 'Yank,' or something else?" to which the witness replied "No, sir." Then he was asked "Are you sure about that?" to which he replied "Absolutely." Three police officers were afterward called as witnesses. Mr. Ed Gapen, one of the officers, was shown at the trial police "report C-67599." Apparently the police report was in court at the trial, and evidently referred to by the witness. None of those officers was asked if the police reports contained a statement made by Mr. Glackin contrary to his testimony on the trial. Nor does it appear that the defendant's attorney demanded the right to inspect the police report. There is now no evidence that the report contained a statement in conflict with what Glackin testified to at the trial. We have no reason to believe that it did. If the defendant believed in good faith that the report contained contradictory statements of the witness, he should have demanded the report in open court, or he should have issued a subpoena duces tecum to procure that evidence. The defendant therefore failed to exercise due diligence.

Motions for new trial on the ground of newly discovered evidence are addressed to the discretion of the trial court, and the determination of that motion will not be disturbed on appeal except for a clear abuse of discretion. Such applications are not regarded with favor. (*People* v. *Tall-*

*madge,* 114 Cal. 427 [46 P. 282].) ▮ On a motion for new trial on the ground of newly discovered evidence, when it appears that it is sought solely for impeachment purpose, the motion should be denied. (*People* v. *Pianezzi,* 42 Cal.App. 2d 270, 280 [108 P.2d 685]; *People* v. *Goldenson,* 76 Cal. 328, 352 [19 P. 161]; *People* v. *Valencia,* 30 Cal.App.2d 126, 129 [86 P.2d 122]; *People* v. *Haines,* 64 Cal.App. 628, 631 [222 P. 183]; 23 C.J.S. 1248, § 1460.) In the Pianezzi case, *supra,* it is said:

"Defendant on his motion for a new trial alleged that the witness Farris' wife would upon a retrial testify that said witness had stated to her that he could not identify 'those fellows,' referring to the men who had murdered the decedents. This alleged newly discovered evidence is purely of an impeaching nature and, therefore, is not ground for granting a motion for a new trial. (*People* v. *Snyder,* 36 Cal.App. 2d 528, 535 [97 P.2d 976].)"

▮ There is an absence of any showing of due diligence on the part of the defendant to secure the alleged newly discovered evidence in this case. In fact it appears that it would have been easy to secure the police records in question. The defendant failed to do so. The question of the exercise of due diligence as a basis for a motion for new trial is subject to the sound discretion of the trial court. When there is a failure to show due diligence, the motion for new trial should not be granted. (*People* v. *Gidney,* 10 Cal.2d 138, 142 [73 P.2d 1186]; *People* v. *Thompson,* 123 Cal.App. 726, 732 [12 P.2d 81]; 23 C.J.S. 1235, § 1455.)

The motion for new trial was therefore properly denied.

The judgment and the order are affirmed.

Peek, J., and Schottky, J. pro tem., concurred.