[Crim. No. 2640. In Bank.—June 6, 1924.]

## THE PEOPLE, Respondent, v. MARINA TORRES, Appellant.

[1] CRIMINAL LAW—PANDERING—NEGOTIATIONS WITH THIRD PERSON ACTING FOR FEMALE—GUILT OF KEEPER OF HOUSE OF PROSTITUTION.—A keeper of a house of prostitution who negotiates with a third person, acting for a girl, instead of with the girl directly, for the latter to enter said house of prostitution, is guilty of the crime of pandering, in procuring, persuading, and encouraging a female to become an inmate of a house of prostitution.

[2] ID.—PROCURING, PERSUADING, AND ENCOURAGING FEMALE TO BECOME INMATE OF HOUSE OF PROSTITUTION—RETURN OF JURY INTO COURT—DEFINITION OF PANDERING—FAILURE TO OMIT IMPERTINENT

ELEMENT—ABSENCE OF PREJUDICE.—In this prosecution for the crime of pandering, in procuring, persuading, and encouraging a female to become an inmate of a house of prostitution, the action of the trial court in merely re-reading the statute defining pandering, when the jurors, standing eleven for conviction and one for acquittal, were returned into court, is not susceptible of the construction sought to be put upon it, namely, that by repeating the phrase "or to remain therein as such inmate" it was meant to convey to the jury that the defendant could, under the evidence, be convicted of that element of the statute; but apart from this, no prejudicial effect attached to the action of the court in failing to omit the phrase objected to, in view of the other instructions given.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Russ Avery, Judge. Affirmed.

The facts are stated in the opinion of the court.

H. M. Dalton for Appellant.

U. S. Webb, Attorney-General, and John W. Maltman, Deputy Attorney-General, for Respondent.

LAWLOR, J. — The defendant, Marina Torres, was charged by information in three counts (1) with the crime of pandering, in procuring, persuading and encouraging a female to become an inmate of a house of prostitution; (2) with feloniously aiding, abetting, encouraging and assisting one John Doe in the commission of the crime of rape upon the complaining witness, a female under eighteen years of age, and (3) with the crime of rape in having aided, abetted, encouraged and assisted one Richard Roe to accomplish an act of sexual intercourse with the said complaining witness. It may be assumed on appeal that one Miguel Mayo, *alias* "Mike Flores," in the city of Los Angeles, brought the complaining witness to a house of prostitution kept by the defendant, and that she allowed the minor to become an inmate thereof. The defendant was prosecuted under counts 2 and 3 on the theory that she was a party to the crime of rape as alleged to have been committed respectively by the procurer, and the crime of rape alleged to have been committed by a visitor at the house of prostitution.

The defendant went to trial on the three counts, and a verdict of guilty was rendered on count 1. She was acquitted on counts 2 and 3. Upon the denial of defendant's motion for a new trial she was sentenced to serve a term in the penitentiary. An appeal was taken by the defendant to the district court of appeal for the second appellate district, and we adopt and make a part hereof the following portions of the opinion of that court in deciding the appeal:

"The defendant was charged with the crime of pandering as defined in the statutes of this state (Stats. 1911, p. 9). The particular charge against the defendant was that she did procure, persuade and encourage a female person to become an inmate of a house of prostitution. On the trial she was found guilty of the offense charged. This appeal is from the judgment of conviction and an order denying a motion for new trial.

"Appellant assigns as grounds for reversal that the evidence was insufficient to justify the verdict, and that the court erred in instructing the jury.

"The evidence shows that Dorothy Hall, a girl sixteen years of age, left her home in the City of Los Angeles in February, 1923, with one Miguel Mayo, and that the two lived together as man and wife in various hotels and lodging-houses in said city up to April 23, 1923. During this time the said Dorothy Hall in these various hotels and lodging-houses practiced prostitution under the direction of the said Mayo, the two sharing in the profits of her prostitution. On April 23, 1923, she entered defendant's house with Mayo, where they lived until the house was raided by the police of said city on April 28, 1923. In the house of the defendant and during her stay there, she and Mayo continued to cohabit as man and wife, and she continued to practice prostitution as she had done prior to taking up her residence there. The evidence is beyond question sufficient to establish the fact that the house of the defendant at the time said Dorothy Hall became an inmate thereof, and during all the time she resided there, was a house of prostitution. The arrangements for Dorothy Hall to enter defendant's house were made with defendant by Mayo, and the terms agreed upon were that defendant was to receive four dollars per week for the rent of the room and fifty cents for each act of sexual intercourse indulged in by the

said Dorothy Hall while an inmate of defendant's house. These terms were complied with by the parties thereto during the time that Mayo and Dorothy Hall occupied a room in defendant's house. The evidence further shows that Dorothy Hall speaks the English language but neither speaks nor understands the Spanish language; that the defendant speaks the Spanish language but neither speaks nor understands the English language; and that Mayo speaks and understands both the English and the Spanish language.

[1] "The claim of appellant is that there is no evidence that she either procured, persuaded, or encouraged Dorothy Hall to become an inmate of her house. Appellant argues that as Dorothy Hall was unable to speak the Spanish language and the defendant was without any knowledge of the English language, it was impossible for them to have any communication one with the other and therefore it would be impossible for defendant to procure, persuade or encourage the girl to enter the house of the former. It is true that this state of facts might preclude the two persons named from having any direct communication with each other. In this proceeding, however, it appears from the testimony that Miguel Mayo, acting for Dorothy Hall, arranged for the latter to enter the house of the defendant. Had the defendant dealt directly with the Hall girl and agreed with her that she was to enter defendant's house with the understanding that defendant was to receive the compensation agreed upon, there is no doubt that the defendant would be guilty as charged. Is she any the less guilty of the offense when she carries on these negotiations with a third person? In her dealings with Mayo she had but one object in view and that was to procure the Hall girl to become an inmate of her own house. Her efforts in this direction were successful, and in so doing she violated the plain provisions of the statute. We are therefore of the opinion that the evidence justifies the verdict of guilty as rendered against the defendant in this action.

"The next objection to the judgment interposed by the appellant is that the court erred in its instructions to the jury. The court, at the request of the prosecution, gave the following instruction:

"'You are instructed that Act 865, General Laws, provides as follows: "Any person who shall procure a female

inmate for a house of prostitution, or who, by promises, threats, violence, or by any device or scheme, shall cause, induce, persuade or encourage a female person to become an inmate of a house of prostitution, or shall procure for a female person a place as inmate in a house of prostitution or as an inmate of any place in which prostitution is encouraged or allowed within this state; or any person who shall, by promises, threats, violence or by any device or scheme, cause, induce, persuade or encourage an inmate of a house of prostitution or any other place in which prostitution is encouraged or allowed to remain therein as such inmate, or any person who shall, by fraud or artifice, or by duress of person or goods or by abuse of any position of confidence or authority, procure any female person to become an inmate of a house of ill-fame, or to enter any place in which prostitution is encouraged or allowed within this state, or to come into this state or leave this state for the purpose of prostitution, or who shall receive or give, or agree to receive or give, any money or thing of value for procuring, or attempting to procure, any female person to become an inmate of a house of ill-fame within this state, or to come into this state or leave this state for the purpose of prostitution, shall be guilty of a felony, to wit, pandering.'''

"During one of the occasions when the court had the jury returned to the courtroom for the purpose of ascertaining whether they had agreed upon a verdict, a juror asked the court the following question: 'Would it be all right for me to ask you the meaning of the word "pandering"? Does it mean allowing to remain in the house, or does it mean going out and getting the girl to come?' The court replied to this question as follows: 'Now, the statute itself describes what pandering is and one instruction has that section of the statute copied.' The court then read to the jury the foregoing instruction, and followed such reading by the following remarks: 'So, a person who does any of those things, who, by promises, threats and so on, shall cause or induce or persuade or encourage a female person to become an inmate or who shall procure for a female person a place as an inmate, or any person who shall by promises, threats, and so forth, cause or induce an inmate of a house of prostitution to remain there in a house of prostitution or

shall, by fraud or artifice procure any female person to become an inmate of a house of ill-fame, or to enter any place in which prostitution is encouraged or allowed within this state, or to come into this state, and so on, is guilty of pandering.' It is now claimed by appellant that the court erred to her serious prejudice, both by the giving of the instruction originally and by afterwards reading it to the jury and commenting upon it in the manner as shown by the above remarks of the court. The charge against appellant, as we have already noted, was that she did procure, persuade and encourage the said Dorothy Hall to become an inmate of a house of prostitution. She was not charged with causing, inducing, persuading or encouraging said Dorothy Hall to remain therein as an inmate. Appellant therefore contends that by the giving of said instruction and by the re-reading thereof, and by commenting on that portion of the statute which provided that any person who shall cause, induce, persuade or encourage an inmate of a house of prostitution to remain therein is guilty of pandering, the court misled the jury into the belief that they could find the defendant guilty of pandering in this action, if the evidence showed that she had caused, induced, persuaded or encouraged the girl to remain an inmate of her house.''

It is shown by the record that after the jury had been deliberating some four hours and thirty-five minutes they were returned into court. The exchange between the court and several of the jurors elicited the fact that the jury stood eleven to one for conviction. It further developed that the divergence of opinion between the eleven jurors on the one hand, and the unconvinced juror on the other, was as to the state of the testimony upon two questions of fact. One of these questions was as to the complaining witness' age—''as to the birth certificate or evidence of her age at the time,'' and the other was whether Mayo when he first went to the house of prostitution ''was accompanied by the girl or whether the girl did not come until the second visit; or whether he was accompanied on his first visit by this man and then went back and brought the girl in the evening?'' Later, the court declined to answer the following question: ''A Juror: May I ask would the girl be in the Juvenile Court, if over eighteen years old?'' It was finally decided by the jurors that the reading of the testimony would make

no difference ''in the disagreement.'' One of them said that reading the testimony as to whether Mayo was accompanied by the complaining witness on the first visit would not help the situation—that ''it is on a different point altogether, and depends upon the age of the girl.'' The dissenting juror was then asked whether reading the testimony as to her age ''would clarify things,'' and he answered ''not for me.'' One of the jurors remarked: ''May I say a word? I am sorry to say it, but I think I am voicing the sentiment of all of us here; there is an impossible situation; we cannot meet.'' The court, however, refused to discharge the jury and they retired for further deliberation without any of the testimony being read.

An hour and a half later, upon again being brought into court, the foreman of the jury, in answer to the question of the court as to whether an agreement had been reached, replied: ''We have not, your Honor; but the one voting for acquittal has voted the same on every ballot since entering the jury-room, and says if we vote from now till doomsday their opinion will never be changed; so it doesn't seem necessary to the rest of the jurors to remain longer.'' Whereupon the court indicated it would not discharge the jury and remarked, referring to what developed on the previous occasion concerning the age of the complaining witness, that it was immaterial under count 1 of the information whether ''she was under age or over age, or how old she was.'' Then the following occurred: ''A Juror: I am the person who has voted not guilty— The Court: I don't know that I care— The Juror: I do this as the jury felt I ought to have done it before; I thought that it was right to do it and I want to do it: It is over the discussion of the instructions and not the evidence; the instructions as to whether this girl came there or was brought there, or came of her own volition, that is what the discussion is. I have read time and again your instructions on the last page and it is a matter of procuring or encouraging, and I have read over every word to see—to what extent the defendant is responsible for this individual's coming. I don't think— The Court: That is a question turning upon the facts. I think the instructions are clear on that as on most other points. I don't believe there is anything I can add to the instructions to clarify them, and if there should be any particular

instruction that any juror does not understand, I would be very glad to make— ... " The court next read the instruction in question as already set forth.

The situation presented to the trial court was this: One of the jurors had been voting throughout for acquittal—the other eleven for conviction. It is evident that the former was confused in stating that his perplexity was over "the instructions and not the evidence," for he said that the point was "whether this girl came there or was brought there, or came of her own volition, that is what the discussion is." That the juror was concerned with the evidence rather than the instructions is further shown by the contentions over the evidence, the principal point being whether the complaining witness accompanied Mayo the first time she went to the house of prostitution. Moreover, the court, in answering the juror, said: "That is a question turning upon the facts." It would seem then that the juror was not induced to change his vote by the circumstance that in re-reading the instruction the court repeated the clause—"to remain therein as such inmate." The juror who acknowledged he voted for acquittal appeared to be in doubt on two points— the age of the complaining witness and whether she went to the house of her own volition. The court cleared up the first point when it stated that her age was immaterial under count 1, and it must be assumed that the juror, in joining in the verdict on count 1, finally concluded she was induced, persuaded and encouraged by the defendant "to enter the house," and that she did not become an inmate of her own volition. In other words, his point of perplexity was not whether the mistress of the house allowed the girl to remain there within the meaning of the clause in question, but whether she induced the girl to become an inmate in the first instance.

In giving the charge originally the court read the entire statute to the jury, and that it was merely intended to repeat it is evidenced by the remark of the judge: "I think I can put my hand on the particular instruction covering the matter"—that is to say, the part objected to was not given to the jury as an element in count 1. The meaning of the word "pandering" was the point of the inquiry, and the juror who propounded the question evidently was thinking of the defendant with reference to the arrival of the

193 Cal.—47

minor at the house in the first instance, for the inquiry is,
"Does it mean allowing to remain in the house, or does it
mean *going out and getting the girl to come?*" It is not
claimed that the defendant brought the complaining witness
to the house, and this being so, it is as consistent with the
evidence that by the words "allowing to remain in the
house" the juror meant allowing the girl to remain when
Mayo first brought her to the house as it is that he had
reference to the period after she had been installed as an
inmate.

[2] It is made abundantly clear that the action of the court
in merely re-reading the statute is not susceptible of the con-
struction sought to be put upon it, namely, that by repeating
the phrase "or to remain therein as such inmate" it was
meant to convey to the jury that the defendant could, under
the evidence, be convicted of that element of the statute.
But apart from this, it is not apparent to us how any preju-
dicial effect could attach to the action of the court in fail-
ing to omit the phrase objected to. After re-reading the
statute the court finally said: "And then the last three
pages of the instructions specifically define if you find cer-
tain things set forth in those instructions, then your verdict
should be so and so. Read those last three pages. I think
that will cover the matter also. I am desirous of making
the law as clear as possible, but I think they are clear."

The other instructions thus referred to included the fol-
lowing, given at the request of the defendant: "The court
instructs you that the crime of pandering consists in the pro-
curing of a place in a house of prostitution for one who
becomes an inmate thereof. In order to complete this
offense it must be proved to your satisfaction beyond every
reasonable doubt:

"First—that a place was procured in a house of prostitu-
tion for a female person; and,

"Second—that, following such procuring of such place in
such house, the female person for whom such place was so
procured actually occupied such place or room in such house.

"If either the first or the second of these elements is
lacking, then the crime of pandering cannot be said to have
been committed.

"In this case I instruct you, therefore, that before you
can find the defendant guilty of the crime of pandering,
you must find:

"1—That the home of the defendant at 1217 Temple Street in the city of Los Angeles, was a house of prostitution, or house where prostitution was allowed or permitted by the defendant.

"2—That a place or room in such house was procured by the defendant for Dorothy Hall and that the defendant induced or persuaded Dorothy Hall to enter said house and become an inmate thereof and occupy a room therein for the purpose of practicing prostitution.

"3—That following such inducement or encouragement of said Dorothy Hall by the defendant and in response to such inducement or encouragement on defendant's part Dorothy Hall did so enter defendant's home, become such inmate and occupy a room for such purpose.

"And unless you so find it is your duty to acquit the defendant of the crime of pandering.

"The court instructs the jury that if you find and believe from the evidence in this case that Miguel Mayo, otherwise known as Mike Flores, procured or persuaded or encouraged Dorothy Hall to enter the home of the defendant at 1217 Temple Street in this city of Los Angeles, and that this defendant did not aid, abet, assist or participate in procuring, or persuading or encouraging said Dorothy Hall to enter her home at said location, then your duty is to acquit the defendant."

It is plain beyond dispute that the jury could not have understood, and did not understand, the court to charge that the defendant might be convicted of inducing, persuading, or encouraging the complaining witness to remain in the house of prostitution as such inmate. That branch of the statute was not included in count 1 of the information, and, although it was read to the jury both originally and on the second occasion when they were returned to court, their consideration was expressly limited throughout the charge, and when the jury was again before the court, to the acts charged in count 1 of the information.

We are satisfied the evidence was sufficient to support the verdict under count 1, and that no prejudicial error is shown by the record.

Judgment and order affirmed.

Richards, J., Lennon, J., Seawell, J., Shenk, J., Langdon, J., *pro tem.*, and Myers, C. J., concurred.