[Crim. No. 3420. Second Dist., Div. One. Sept. 29, 1941.]

THE PEOPLE, Respondent, v. CHARLES W. MONTGOM-
ERY et al., Appellants.

(1)

6

George Stahlman, Morris Lavine and F. Paul Hornaday for Appellants.

Earl Warren, Attorney General, and Frank Richards, Deputy Attorney General, for Respondent.

DORAN, J.—Both appellants herein, together with others named, were charged by an indictment with one count of conspiracy to commit pandering, a felony, (Stats. 1911, p. 9; Act 1906, p. 970, Deering's General Laws 1937) with four counts of pandering and two counts of attempted pandering. Appellant Montgomery was convicted on all counts and appellant Forrester was convicted on three counts of pandering.

Each appellant prosecutes a separate appeal from the respective judgments of conviction and from the orders denying appellants' motions for a new trial. The evidence adduced at the trial establishes that appellant Montgomery, in conjunction with defendants Barrett and Tullis, at various times and upon different occasions transported certain girls to and from houses of prostitution in and about the city of Los Angeles and other parts of the state. There was ample evidence from which the jury might infer that this was done pursuant to an organized plan or scheme on the part of all three to place the girls in various houses of prostitution; and there was sufficient evidence to establish that the girls named as victims in the counts of the indictment were procured under this organized plan, either through the services of Barrett in enticing them from dance halls or similar places of amusement, or otherwise. It was also sufficiently established that appellant Ann Forrester operated several of the houses of prostitution in Los Angeles in which one of the said females was placed. Appended to appellant Forrester's brief there is a summary of all the evidence adduced at the trial and the reading of this summary alone clearly reveals the sufficiency of the evidence. The record itself is some 2150 pages in length. The points raised by each appellant will be separately considered.

### Appeal of Charles W. Montgomery.

Appellant Montgomery attacks the sufficiency of the indictment, contending that it fails to specify the form of pandering which appellant was accused of having committed. Demurrer to the indictment was overruled in the trial court. Count I of the indictment charges defendants with a conspiracy to commit a crime through violation of section 1, Act 1906, Statutes of 1911, page 9, General Laws of the State of California, to-wit, pandering, a felony, and sets forth seventeen separate overt acts in support of the charge. Four of the other counts accuse defendants of committing the crime of pandering, in that, on a certain date they willfully, unlawfully and feloniously procured a female inmate (naming her) for a house of prostitution. The two remaining counts charged defendants in the same form with attempted pandering. *People* v. *Wright*, 26 Cal. App. (2d) 197 [79 Pac. (2d) 102], furnishes a complete answer to appellant's contention.

There an information, worded like the indictment in the instant case, was held to state a good cause of action. The information there charged that the defendant did "willfully, unlawfully and feloniously procure for a female person, to-wit: one Esther Stephens Blanas, a place as an inmate of a house of prostitution." The fact that the indictment in the instant case accused defendants of "procuring a female inmate for a house of prostitution" does not render the charge less sufficient. As to the elements of the offense of pandering under the California statute, see *People* v. *Cimar*, 127 Cal. App. 9 [15 Pac. (2d) 166, 16 Pac. (2d) 139]. It cannot be successfully contended that the indictment fails to satisfy the constitutional requirements as to notice of the charges against appellant.

Appellant attacks the sufficiency of the evidence. As already pointed out, there can be no merit to any such contention. The evidence was sufficient to submit the question of appellant's guilt to the jury on each count of the indictment. The testimony of appellant's accomplices, Barrett and Tullis, produced as witnesses for the prosecution after dismissal of certain of the charges against them, was amply corroborated. Appellant does not question the corroboration. However, he contends that the evidence as to the counts other than that of conspiracy fails to show that appellant acted as an agent for a house of prostitution. As will hereinafter more fully appear, agency for a house of prostitution is not an essential element of the crime of pandering.

Appellant complains of numerous errors in the instructions given by the court to the jury, and of failure of the court to give other instructions requested.

On the question of the corroboration of testimony of accomplices the court did not instruct the jury strictly in the language of section 1111 of the Penal Code, which provides: "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." The court in instructing the jury omitted the clause beginning "and the corroboration is not sufficient, etc." In *People* v. *Cowan*, 38 Cal. App. (2d) 231 [101 Pac.

(2d) 125], at 243, 244, such a failure or omission in an instruction on corroboration of accomplices was conceded to be error (on authority of *People* v. *Swoape,* 75 Cal. App. 404 [242 Pac. 1067], and *People* v. *Brown,* 25 Cal. App. (2d) 513 [77 Pac. (2d) 880]). But the court in the Cowan case did, in effect, instruct the jury at least twice that there must be evidence, independent and apart from that of the accomplices, that in and of itself tended to connect the defendant with the crime charged, and the jury was also given another instruction on the subject of corroboration generally; and as a result, it was held in the Cowan case that the failure to incorporate the omitted sentence was not prejudicial. The jury in the instant case was instructed to the same effect as was the jury in the Cowan case. Moreover, in the Swoape case, *supra,* the stress was there laid upon the refusal of the court to instruct that "by corroborative evidence is meant additional evidence of a different character to the same point," which language was characterized as of extreme importance. It appears that the error in failing to give the instruction requested in the Swoape case was based more upon the exclusion of the latter language than upon the omission of the clause contained in section 1111 of the Penal Code. (See *People* v. *Swoape, supra,* at p. 415, et seq.) *People* v. *Brown, supra,* merely concerns failure to instruct that certain witnesses were accomplices where the facts were admitted. It would appear, in view of the court's instruction on corroborating evidence in general, and of the instruction given to the effect that accomplices must be corroborated by evidence which standing alone tends to connect the defendants with the commission of the crime, that here, as in *People* v. *Cowan, supra,* the error in failing to include the clause in question was not prejudicial.

The court instructed the jury that Brenda Allen Burns, one of the girls procured by defendants, who testified for the prosecution was not an accomplice. Appellant contends that the evidence showed this girl to be an accomplice. It does not appear that the Burns girl joined with defendants in procuring any other girl and the contention appears to be based solely on the ground that she willingly complied in her own procurement. Appellant's contention is completely answered by *People* v. *Brown,* 61 Cal. App. 748 [216 Pac. 58], cited by respondent. Appellant's attempt to distinguish

between "persuading" and "procuring" is without substance. If a person cøuld not "persuade" himself or herself, by the same token he could not "procure" himself. In the Brown case it was held that the person "induced, persuaded and encouraged" to become an inmate of a house of prostitution could not be held an accomplice in the act of pandering based upon such inducement.

■ Appellant's contention that the court in instructing the jury assumed the fact that appellant was a conspirator by stating in an instruction, "if you are satisfied . . . that the defendant Montgomery or any other conspirator in furtherance of the conspiracy," etc., is absolutely without merit. The meaning of the instruction, read as a whole, would be perfectly clear to a person of common understanding, namely, that if the jury believed that Montgomery was a conspirator, and in furtherance of the conspiracy did certain acts they should find him guilty.

■ Appellant complains of an instruction by the court to the effect that a conspiracy need not be the result of an express agreement, but may result from the actions of the defendants in mutually carrying out a common purpose to achieve an unlawful end. The instruction correctly stated the law. (*People* v. *Yeager,* 194 Cal. 452, 484 [229 Pac. 40].)

■ Appellant complains of the following instruction, contending that by it the jury was instructed to convict on a charge not made by the indictment. The instruction reads as follows: "Counts II to V, inclusive, charge the defendants with the offenses of pandering; Counts VI and VII charge the defendants with the offenses of attempted pandering. Under those charges it is unnecessary to prove that the female was procured by means of force or fraud to become an inmate of the house of prostitution. It is not even necessary to prove that she became an inmate of the house of prostitution against her will. If you are satisfied beyond a reasonable doubt that the conduct of the defendant assisted, induced, persuaded or encouraged the female to become an inmate of the house of ill-fame for the purpose of practicing prostitution, such defendant is guilty of the offense of pandering. In other words, under those circumstances such defendant is deemed to have procured said female to become

an inmate of a house of prostitution.'' The specific charge in each of the counts in question was that defendants procured a female inmate for a house of prostitution, which is the offense named in the first clause of section 1 of the act in relation to pandering, *supra*. Section 1 of that act recites a number of alternative situations under any one or more of which a person is to be deemed guilty of pandering. The alternatives recited in the statute are plainly not all mutually exclusive of each other. For example, the second clause provides in effect that any person who ''by promises, threats, violence, or by any device or scheme, shall cause, induce, persuade or encourage'' a female person to become an inmate of a house of prostitution, is guilty of pandering. But the term ''procure'' as used in the first clause of section 1 of the statute necessarily implies the use of persuasion, solicitation, encouragement and assistance in achieving the unlawful purpose, and it follows that if a defendant is charged with ''procuring'' a female as an inmate for a house of prostitution, he may be found guilty of such procurement if it is properly established that he either assisted, induced, persuaded or encouraged her to become an inmate. It is the offense of pandering that is condemned by the statute rather than the particular means by which the crime is committed. (See *People* v. *Cimar, supra,* at p. 14; *People* v. *Wright, supra.*) The jury could not have been misled to the prejudice of appellant by the instruction given. (*People* v. *Marino,* 5 Cal. App. (2d) 550, 553 [42 Pac. (2d) 713].)

■ Appellant also takes exception to the trial court's instruction to the effect that under the provisions of the pandering statute, if the evidence discloses that defendant acceded to the importunities of a wanton woman and at her request found her a place in a house of prostitution, the defendant is just as guilty of the offense of pandering as though he had induced her to become such an inmate by means of threats, violence or fraud. In this regard, appellant in his contentions misconstrues the meaning and application of the term ''procure'' as used in the statute, and in fact misconstrues the entire purpose of the statute. It is immaterial whether the female ''procured'' is an innocent girl or a hardened prostitute of long experience; nor is it material that the procurement was either at her request or upon the defendant's own initiative. In either case the de-

fendant has ''procured'' a female within the meaning of the act and is guilty of pandering. The instruction to which appellant here excepts correctly construed the pandering statute. (*People* v. *Cimar, supra,* at p. 15.)

Exception is taken to an instruction of the court on the question of attempt to commit a crime, on the ground that the trial court in its instruction omitted an essential element of an attempted crime, namely, that to constitute an attempt to commit crime, the intervening circumstances which prevented the actual commission must occur apart from and independent of the will of the defendant. In other words, if a person voluntarily abandons his proposed plan of crime before actual commission of the crime, he cannot be held guilty of an attempt. The proposition contended for by appellant is correct and the particular instruction in question did omit that essential element of an attempted crime, but the defect therein was adequately remedied by the instruction immediately following on the specific attempt in question, namely, to procure certain females for a house of prostitution, wherein the court instructed the jury in effect that the interruption must occur through the intervention of circumstances ''apart from and independent of the will of the persuader.''

The court instructed the jury in effect that the fact that other persons might also have violated the law and had not been arrested or prosecuted should not influence the jury or affect their consideration of the facts in the instant case; and that such circumstances did not constitute a defense to the prosecution in question. Appellant contends that this instruction violates the provisions of the 14th amendment of the United States Constitution, and article I, sections 11 and 21 of the Constitution of California, on the authority of *Yick Wo* v. *Hopkins,* 118 U. S. 356 [6 Sup. Ct. 1064, 30 L. Ed. 220], a case concerning discrimination in the licensing of laundries under an ordinance of the city and county of San Francisco. Appellant argues that the Yick Wo case and others upholding the 14th amendment to the Constitution of the United States are to the effect that no person shall be denied the equal protection of the laws, stating: ''Thus, where officials discriminate and prosecute one and not the other for the same act, there is a denial of protection of the laws under the 14th Amendment, and the prosecution is therefore void.''

Appellant misconstrues the purport of such decisions as that of the United States Supreme Court in the Yick Wo case. It should be borne in mind that in the Yick Wo case the equal protection of the law was extended to persons of a particular race to enable them to engage in a lawful business on a basis of equality with all other persons. Appellant now in effect argues from this that equal protection should also be extended to any person to enable him to commit a crime on a basis of equality with all other persons. While all persons accused of crime are to be treated on a basis of equality before the law, it does not follow that they are to be protected in the commission of crime. It would be unconscionable, for instance, to excuse a defendant guilty of murder because others have murdered with impunity. The remedy for unequal enforcement of the law in such instances does not lie in the exoneration of the guilty at the expense of society. Applying the rule to the instant case, there is an obvious distinction between extending protection to persons of the Chinese race in pursuit of the harmless and somewhat necessary business of laundering and the extension of a like protection to those engaged in the vicious social evil of pandering. Protection of the law will be extended to all persons equally in the pursuit of their lawful occupations, but no person has the right to demand protection of the law in the commission of a crime. In civil matters the distinction is illustrated by the rule that the law will not enforce an illegal contract. If the law will not enforce an illegal contract, neither will it protect a criminal in the commission of his crime. The instruction in question correctly stated the principles involved therein. In this connection, it should be stated that the only possible application of the doctrine of the Yick Wo case to a criminal prosecution would appear to be in an instance where a person was under prosecution for the commission of some otherwise harmless act which ordinarily had not theretofore been treated as a crime. Furthermore, in the instant case it does not appear that appellant attempted to defend on the ground of discriminatory enforcement of the law, even if such a defense were available to him.

Appellant also takes exception to the refusal of the trial court to give numerous instructions requested. One of the requested instructions was to the effect that the testimony

of an accomplice cannot be corroborated by that of another accomplice. The court instructed the jury that defendants Barrett and Tullis were accomplices, an undisputed fact. There was no evidence to show that any of the other witnesses were accomplices. The jury were instructed that if they found that a conspiracy existed between the defendants charged in the indictment, any testimony given by one defendant against the other, must be corroborated by other competent testimony. Applied to the facts of this particular case, the instruction given by the court charged the jury in effect that testimony of an accomplice could not be corroborated by that of another accomplice and rendered further instruction on the point unnecessary.

While defendants requested an instruction regarding evidence which merely excites suspicion, which proposed instruction appears to have correctly stated the rule involved, in view of the instructions given as to the type of evidence required for corroboration of accomplices, as to corroboration of witnesses generally, and on the doctrine of reasonable doubt, it does not appear that appellant could have been prejudiced by a refusal to give the requested instruction.

An instruction requested as to how to test the corroboration of accomplices' testimony correctly stated the rule and amplified it; but as the court instructed the jury that the corroboration was sufficient "if such corroborative evidence *standing alone* tends to connect the defendant with the commission of the crime charged," the appellant could not be held to have been prejudiced merely by the refusal to give a further instruction amplifying the rule. The instruction given on the point was sufficiently clear to a person of common understanding and that requested was therefore not necessary.

Defendants requested an instruction to the effect that a female can be an accomplice to the crime of pandering. It has already been pointed out that the court did not err in instructing the jury that the witness Brenda Allen Burns was not an accomplice; hence the requested instruction could not have applied to her testimony. Appellant intimates that it might have applied to the testimony of other female witnesses, but does not refer to any applicable portion of the record in support of his contention. In the absence of any specific showing of error in refusing to give such

an instruction, it cannot be said that such refusal constituted prejudicial error. Nor can it be said that the jury were misled or confused by the failure to receive such an instruction merely because some of the witnesses in the case were females.

■ Appellant takes exception to the court's instructions with respect to the subject of intent, contending that the crime of pandering requires a specific intent. The crime of pandering does not necessarily involve the question of specific intent. Under the statute, all that is required to render a person guilty of pandering is the commission of any one of the acts set forth in section I thereof, and the only intent required is that the act be voluntarily done or performed by the person charged, with full knowledge of its nature. In other words, by way of example, if a person places a female in a house of prostitution, knowing it to be such and intending the female to commit acts of prostitution therein, he is guilty of pandering, regardless of whether he did such act with intent to violate the law, or with malice, or feloniously, or otherwise. As already indicated herein, the statute condemns the vicious practice of supplying and maintaining the supply of females for houses of prostitution. Anyone who knowingly takes a part in the evil practice condemned is guilty of a violation of the law regardless of the state of his mind with relation to the act in question. Appellant cites *People* v. *Snyder,* 15 Cal. (2d) 706, 710 [104 Pac. (2d) 639], as embodying the same error as appellant contends was committed in the instant case. *People* v. *Snyder* concerned a prosecution for attempted murder, a crime requiring a specific intent, and is not applicable here. There was no error in the instructions of the court as to the intent of defendants in the instant case.

■ The trial court instructed the jury to the effect that there is no distinction between circumstantial evidence and direct evidence in the degree of proof required for conviction. Appellant cites as error the refusal of the court to give further instructions requested by defendants on the subject of circumstantial evidence, contending that the prosecution relied solely upon circumstantial evidence for conviction. The record reveals appellant's contention in this respect to be incorrect. The evidence adduced appears to have been largely direct and not circumstantial, having been given by eyewitnesses and persons present at the time of the occurrence of

the events to which they testified. In the absence of any specific showing to the contrary, it cannot be said that any further instruction was required on the question of circumstantial evidence.

Requests for instructions based upon a theory that to be found guilty of the charges against defendants it must be shown that defendants were acting for a house of prostitution in the capacity of an agent therefor, were properly refused. As already mentioned, there is nothing in the pandering statute requiring a person charged to have been acting for a house of prostitution. Such a construction would defeat the apparent purpose of the act, to combat the evil of prostitution through attacking the source of supply. In the light of the obvious purpose for which the statute in question was enacted, procuring an inmate for a house of prostitution could not reasonably be interpreted to mean procuring an inmate as an agent or representative of a house of prostitution.

Appellant takes exception to the refusal of the trial court to give an instruction to the effect that evidence admitted as to one count of the indictment was not to be considered as to the other counts, but fails to point out where, if at all, any evidence was admitted solely as to one particular count and not as to the others. It does not appear that the admission of any evidence was so limited by the court, and if evidence was not so limited such an instruction as that requested would clearly be confusing and misleading to the jury.

Requested instructions having to do with the question of the female involved voluntarily becoming an inmate or consenting to become one were of course properly refused. It has already been shown that the consent or willingness of the female is immaterial.

The substance of proffered instructions on the question of conspiracy and declarations of the parties thereto was covered by an instruction requested by one of the defendants and given as modified by the court. As so modified, the instruction given applied to all defendants and correctly stated the principle involved.

Appellant complains of the court's having restricted the cross examination of defendant Barrett, called as a witness for the prosecution, by sustaining objections to questions

such as the following: "You knew you wouldn't be prosecuted on those six counts the others are being tried on in this court?"; "You believe in your heart you will not be tried on those counts?"; "Well, you expect to get probation, don't you?"; and other similar questions calculated to bring out the interest, bias or prejudice of the witness in giving evidence for the people. While it was error to sustain objections to questions of this type, it appears that appellant's other alleged accomplice, Tullis, in testifying for the prosecution was permitted to state that he expected to obtain leniency. It also appears from the record that even if the jury had chosen to discredit the entire testimony given by Barrett, other evidence adduced was sufficient on which to find the appellant guilty as charged. The error thus complained of could not be held prejudicial. (*People* v. *Bennett,* 79 Cal. App. 76, 95 [249 Pac. 20].)

 Appellant complains of the somewhat extended examination of a witness by the trial judge. From a reading of the record it does not appear that the court committed any misconduct in such examination. The court questioned the witness after examination by counsel. The questions were pertinent and did not show bias or prejudice as against appellant and there was nothing in the form of the questions suggesting any prejudice on the part of the trial judge. (See *People* v. *Mintz,* 106 Cal. App. 725 [290 Pac. 93].) A reversal may not be had upon a mere showing that the trial court examined a witness at unusual length and without apparent necessity therefor. (*People* v. *Keys,* 82 Cal. App. 602 [255 Pac. 897].) Moreover, from all that appears here, the questions of the trial court served to clarify the record of the witness' testimony. The witness, one of the defendants, had pleaded guilty to the first count of the indictment. There could be no prejudice to appellant in the court's having asked the witness if he had pleaded guilty thereto because he believed he was guilty. The question did not indicate that the court thought appellant guilty because the witness pleaded guilty.

 There was no error in the sustaining of objections to certain questions asked of defendant Tullis on cross examination. Appellant fails to point out where the witness had testified on direct examination to any matter pertinent to the questions on cross examination as to which the objections

were sustained. Cross examination, except for purposes of impeachment, should be confined to matters which have been elicited from the witness on direct examination. (27 Cal. Jur. 98, sec. 77.) Moreover, the sustaining of the objection to the question as to whether Tullis had conspired with the other defendants, could hardly have been prejudicial since the question called for a categorical answer which could have been of little, if any, value to appellant's case, even assuming that a statement of such a conclusion might properly have been elicited.

There was no error in the admission of part of a telephone conversation heard by a witness. The part heard by the witness appears intelligible and the witness was properly allowed to testify to the part he heard, namely, that part carried on by appellant. (See *People* v. *Suter*, 43 Cal. App. (2d) 444 [111 Pac. (2d) 23]; *People* v. *Luis*, 158 Cal. 185, 194 [110 Pac. 580].)

Appellant may not properly complain of the testimony of the witness Pauline Skevenski, an acknowledged prostitute. Her testimony was admitted only as to appellant Forrester. The basis of appellant's complaint in this regard is certain salacious matter given by the witness as part of a conversation the witness stated she had with appellant Forrester. Appellant contends in effect that the nature of this testimony was so revolting as to create bias and prejudice in the minds of the jury as to all defendants. But the conversation so related was proper to show the character of the house operated by appellant Forrester and the matter complained of formed an integral part of the conversation. The court permitted the prosecution to elicit from the witness an explanation of a more or less esoteric phrase used in the conversation, to which line of questioning objection was interposed. Under the circumstances there was no error in allowing such an explanation; since the phrase formed an integral part of an admissible conversation it was only proper to permit a definition thereof for the enlightenment of the uninitiated. The fact that the related conversation contained references to a revolting and repulsive type of act could not render the relation of the conversation inadmissible if otherwise pertinent.

Appellant's contention that the *corpus delicti* was not established is without any merit whatsoever. What has already

been said heretofore serves to refute such a contention. (See *People* v. *Cimar, supra,* at p. 16; *People* v. *Wright, supra.*)

It appears that before the end of the trial the witness Brenda Allen Burns was permitted to leave the jurisdiction. However, this was after she had testified and been submitted to cross examination. Respondent properly points out, and the record indicates, that at the time she left the witness stand, after testifying, no request was made that she be kept available for future testimony and no request was made to the court for an order to that effect. Under such circumstances there is no basis for a complaint that after giving her testimony the witness was permitted to leave the jurisdiction.

Appellant's numerous exceptions as to the conduct of the prosecutor in argument to the jury are for the most part without merit, dealing as they do largely with what, in the light of the record, was either proper argument based on the evidence, or the prosecutor's interpretation of the evidence. There appear to have been only one or two instances of misstatements of evidence by the prosecutor in his argument, and in every such instance the court either instructed the jury to disregard such statements or the prosecutor withdrew his remarks. Under the circumstances here presented and in the light of the record, the effect of any such misconduct by the prosecutor must be held to have been cured; though it is extremely doubtful that the effect thereof could be held in any event to have been prejudicial to appellant.

One point, however, in this regard might bear discussion. Over objection, appellant Ann Forrester was compelled to admit, while a witness on the stand, that she had refused to testify before the grand jury. In his argument, the prosecutor stated, in part: "I don't intend to convey the impression that you should determine the guilt or innocence of the defendant Ann Forrester or any other defendant merely by reason of the fact that the Grand Jury returned this indictment, or that any indictment was returned by the Grand Jury. But we do know from the testimony of Ann Forrester herself on this witness stand on two occasions . . . she did go before the very same Grand Jury that returned this indictment—and did she tell those Grand Jurors anything at all about her relationship with these so-called higher ups, McAfee, Buckwald and Taylor? The answer to that

question is right here in the record. . . . '' To which remarks defense counsel immediately took exception and asked the court to instruct the jury to disregard them. It does not appear from the record that the testimony as to failure to testify before the grand jury was limited to the purpose of impeachment. ▇▇▇ Failure of a defendant to testify before the grand jury may be introduced in evidence at the trial, but only for the limited purpose of impeachment. (*People* v. *Kynette*, 15 Cal. (2d) 731 [104 Pac. (2d) 794], at pp. 749 to 751.) ▇▇▇ From all that appears here, Ann Forrester's refusal to testify before the grand jury was admitted in evidence, and commented upon in argument by the prosecution, as pertaining to the general issue of guilt or innocence. There was error on the part of the court in failing to limit the purpose of such evidence, and the comments as made in argument by the prosecution thereon were improper. However, it does not follow that every invasion of even a constitutional right necessarily requires a reversal, and in a case involving a far more flagrant infraction in this respect, such error was held not to have been prejudicial in the light of the entire record. (See *People* v. *O'Bryan,* 165 Cal. 55, 60 et seq. [130 Pac. 1042].) Similarly, in the light of the entire record here presented the error of the court and misconduct of the prosecution was necessarily so slight as to preclude the possibility of prejudice resulting therefrom. The effect thereof is a matter of pure speculation and conjecture. Moreover, it is difficult to perceive how this matter could in any way have prejudiced appellant Montgomery's defense as it did not in any way pertain to him.

### *Appeal of Ann Forrester.*

Appellant Forrester contends that the evidence was insufficient to warrant a conviction upon the charges of which she was found guilty; that the verdicts are void for uncertainty; that the court committed prejudicial error in sustaining objections to certain evidence, in improperly limiting the cross examination of a certain witness, in ruling and directing the jury to consider all of the evidence in the case against appellant, and in informing the jury that a *prima facie* case of conspiracy had been made out against all of the accused, in denying appellant's motion for a directed verdict of acquittal in her favor, and in giving certain instructions and refusing

to give others requested. Appellant also contends that she was not accorded a fair trial. Appellant lays principal stress upon her contentions as to the insufficiency of the evidence.

■ The charges in the indictment, of which appellant was found guilty, accused appellant, together with the other named defendants, and each of them, of having willfully, unlawfully and feloniously procured a female inmate, Brenda Allen Burns, for a house of prostitution. This constitutes the offense of pandering mentioned in the first alternative set forth in the pandering act, *supra*. Each of the said counts had to do with such procurement on a different date. As already pointed out, the evidence sufficiently established that appellant Forrester was the owner or operator of the houses of prostitution in which the said Brenda Burns was placed as the result of the conspiracy, plan or scheme of the defendants Montgomery, Tullis and Barrett. It also appears from the evidence that appellant Forrester saw the Burns girl, interviewed her and approved her as an inmate for appellant's houses of prostitution. Appellant concedes that "all appellant did was to permit Brenda Burns to work as a prostitute in houses of appellant." This admission of appellant effectively disposes of all of her contentions as to the sufficiency of the evidence, for if appellant knowingly permitted Brenda Burns to work for appellant as a prostitute in appellant's houses of prostitution appellant was guilty of having procured the said female person as an inmate for a house of prostitution within the meaning of the first alternative description of pandering contained in section 1 of the pandering act. ■ Appellant contends that the pandering statute does not make the operation of a house of ill-fame an offense of pandering. But what does the operator of a house of ill-fame do if not "procure" inmates for the purpose of practicing prostitution in the house? Every time such an operator receives a female as an inmate of the house the operator thereof is guilty of pandering within the meaning of the pandering statute. The language of the act is clearly broad enough to include within the scope of its provisions the activities of operators of houses of prostitution in obtaining inmates for their houses. It was the apparent purpose of the legislature in enacting the statute in question to attack just such an evil.

Appellant's contention that to prove a defendant guilty of a charge of pandering, as described in the first alternative clause of the act, it must be established that the defendant acted as the agent of the house of prostitution, is without merit. Her contention and argument in support thereof in this regard is substantially the same as that made by appellant Montgomery. Neither appellant has cited any authority which even remotely supports such a contention. As far as appellant Forrester is concerned, it has already been established that the operator of a house of prostitution may be convicted of pandering under the circumstances shown to exist in the instant case. (*People* v. *Torres,* 193 Cal. 730 [227 Pac. 177] ; *People* v. *Wright,* 26 Cal. App. (2d) 197 [79 Pac. (2d) 102].)

Appellant contends that because she was acquitted of the charge of conspiracy she could not have been found guilty of procuring Brenda Burns for a house of prostitution. It should be noted that the charge of conspiracy was based upon seventeen separate overt acts, with many of which appellant Forrester had no connection. Her connection with the charge of procuring Brenda Allen Burns has already been pointed out. It is at once clear that appellant could have received Brenda Burns as an inmate of her house without having had any connection whatsoever with the plan or conspiracy by means of which Brenda Burns was brought to appellant's attention.

Many of appellant's contentions, and much of her argument in support thereof, are based upon the premise that it is settled law that the pandering act is made up of a series of offenses, each separate and distinct from the others. It has been held that each alternative act, described in section 1 of the pandering statute and included in the definition of pandering therein, is a separate offense, (*People* v. *Cimar, supra; People* v. *Burns,* 75 Cal. App. 84 [241 Pac. 935]) ; and the commission of a single enumerated act will constitute the offense. (*People* v. *Lawlor,* 21 Cal. App. 63 [131 Pac. 63].) From this, appellant concludes that the language used to describe one of the enumerated acts cannot be applied to any other of the acts included in the definition of pandering contained in section 1 of the act in question. Much the same contention has been made by appellant Montgomery and one phase of the matter has already been discussed herein in the

consideration of his appeal. It is upon such an assumption that appellant Forrester argues that to "procure a female person as an inmate for a house of prostitution," the first act denounced in section 1 of the pandering act, is an entirely different and distinct crime from that set forth as the third alternative act, namely, to "procure for a female person a place as an inmate in a house of prostitution"; and that the same person cannot be guilty of both acts in the same transaction. Appellant argues that in the first instance the procurer acts as the agent of the house and in the second he acts as the agent of the female. But in either instance he is guilty of the same offense, pandering, and the social consequences are the same. The consequences are what the legislature clearly intended to remedy by the pandering act. In setting forth the alternatives enumerated in section 1 of the act the legislature was undoubtedly endeavoring to cover all the various ramifications of the social evil of pandering and include them all in the definition of the crime, with a view of effectively combating the evil sought to be condemned.

While it is true that each enumerated alternative constitutes a separate offense, in the sense that commission of only one alternative act is sufficient to constitute the offense of pandering, it does not necessarily follow that each alternative enumerated is exclusive of the others. It has already been demonstrated that a person may procure a female inmate for a house of prostitution by means of promises, threats, violence, or any scheme or device by which the female is caused, induced, persuaded or encouraged to become such an inmate. Likewise, anyone who has procured for a female person a place as inmate in a house of prostitution has necessarily procured a female inmate for a house of prostitution. The two alternative situations are in fact synonymous as far as the purpose of the pandering act is concerned. To argue otherwise is to give the act form without substance. *Re Roberts*, 157 Cal. 472 [108 Pac. 315], cited by appellant and dealing with section 337a of the Penal Code, a statute making an offense of certain forms of betting, is not properly applicable here. There the several offenses described were plainly distinct and independent of each other. In fact, it is to be noted that section 337a now sets out the offenses there condemned in six separately numbered subsections.

In this connection, appellant relies upon *People* v. *Lawlor* and *People* v. *Burns,* both *supra,* and criticizes *People* v. *Cimar* and *People* v. *Wright,* both *supra.* It may be well, therefore, to review here the decisions in question. In *People* v. *Lawlor,* the defendant was charged with "procuring for a female person a place as an inmate in a house of prostitution." Defendant demurred and contended on appeal, in effect, that to state an offense he must have been charged with all the acts and conduct set forth in the pandering act. His contention was held without merit. ▇▇▇ The case stands for the proposition that under the pandering act the commission of a single enumerated act will constitute the offense. From this, however, it does not follow that a defendant may not have been guilty of having committed in the same transaction more than one of the acts enumerated.

In *People* v. *Burns, supra,* an information charged in one count that defendant did "cause, induce, persuade and encourage" a female to become an inmate of a house of prostitution, and in a second count charged in like manner that the female was induced by defendant to remain in such a house. Defendant contended the information did not state an offense. It was held that the statute provides in such instances that the defendant must "by promises," etc., cause, induce, persuade, etc., and that under the language of the statute it was necessary to plead and prove that the female was caused, induced, etc., *by means* of promises, devices, etc., and failure to so plead constituted total failure to charge one of the essentials of the offense. But in the instant case the charge was in the language of the first alternative enumerated in the statute, and the reasoning applied in the Burns case is necessarily limited to the alternatives there concerned and can have no application here. Incidentally, the Burns case was disapproved by the Supreme Court insofar as it is in conflict with *People* v. *Cimar,* as hereinafter noted.

In *People* v. *Cimar, supra,* the defendant was charged with "procuring for a female person a place as an inmate in a house of prostitution." It was contended that the verdict was not supported by the evidence because the female was not procured against her will but voluntarily entered and remained in the house. It was also asserted that the trial court erred in the admission of certain testimony and in instructions to the jury. The evidence showed that defendant

had seduced a 17 year old girl and then placed her in a house of prostitution. It was there held that according to the provisions of that portion of the statute under which defendant was charged it was unnecessary to prove that the female was procured by means of promises, threats, devices, etc., or that she became an inmate against her will. In denying a petition for a hearing in the Cimar case the Supreme Court expressly disapproved anything in the opinion of *People* v. *Burns* contrary to the decision in the Cimar case. *People* v. *Cimar* is applicable to the instant case in that the alternative act under the statute which defendant was charged there with committing is of the same type as that here charged, and that here, as in *People* v. *Cimar,* it is not necessary to plead or prove the means by which the female was procured. The means of procuring is immaterial.

In *People* v. *Wright, supra,* defendant was charged with procuring for a female a place as inmate of a house of prostitution. The defendant in the Wright case was an operator of a house of prostitution and at the request of a third party, a man, consented to the girl in question becoming an inmate of her house. The evidence in that case, as set forth in the opinion, reveals a situation closely resembling that in the instant case. In fact, with only a few minor exceptions the situation of appellant here and that of the defendant in the Wright case are identical. In the Wright case the court held the evidence sufficient to warrant finding the defendant guilty of procuring the girl "to become" an inmate of her house of prostitution. As already pointed out, "procuring for a female a place as an inmate in a house of prostitution" is necessarily synonymous with "procuring a female inmate for a house of prostitution," insofar as the pandering act is concerned; and it is immaterial which language is employed in the charge, both amount to the same thing.

Appellant's contention that the verdicts are void for uncertainty is based upon the argument that procuring a female inmate for a house of prostitution is a separate and distinct offense from procuring for a female person a place as inmate; and that, since the court instructed the jury in effect that if they believed the appellant had procured a place for Brenda Burns as an inmate they might find her guilty and that they might also find appellant guilty if they were satisfied that appellant acted for a house of prostitution and pro-

cured Brenda Burns as an inmate thereof, it cannot be known which of these legally irreconcilable beliefs the jury entertained. It has already been shown that appellant's contention in this respect is wholly without merit.

Appellant complains that the trial court erred in limiting the examination of one Donna Stewart, a witness for the defense. According to appellant, the matter which the trial court ruled out had to do with the conspiracy charge, of which appellant was exonerated. Moreover, the evidence against appellant on the counts of which she was found guilty was sufficient to convict her thereon even if the testimony of Donna Stewart had been entirely eliminated. No prejudice to appellant could be held to have resulted, therefore, even if the ruling of the court on the question was erroneous.

Appellant also contends that the court erred in ruling and directing the jury to consider all of the evidence in the case against appellant, and in informing the jury that a *prima facie* case of conspiracy had been made out against all of the accused. Having been exonerated by the jury of the charge of conspiracy, appellant cannot complain of the court's ruling and action in the matter. Obviously, no prejudice resulted therefrom.

Since it appears from the record that the evidence against appellant was sufficient to support the verdicts of guilty returned by the jury in her case, there was obviously no error in the court's refusal to direct a verdict in her favor on all counts.

Other contentions of appellant have already been answered by what has been said before herein, either in consideration of appellant's appeal or that of appellant Montgomery.

In conclusion appellant reiterates her contention that the alternative descriptions of the offense of pandering enumerated in section 1 of the pandering act constitute separate offenses and that the respective descriptions of these offenses do not apply to the other offenses in the series. As already demonstrated, the latter portion of appellant's contention is untenable. While previous decisions have held that the act creates a series of separate offenses, none of these decisions may be taken as authority for the proposition that the description of each enumerated offense of pandering is necessarily exclusive of the description of other enumerated acts. It is true that the commission of any one of the enumerated acts

constitutes by itself the offense of pandering, but, as already seen, it does not follow that a defendant may not be guilty of having committed more than one of the enumerated acts in a single transaction, or that the description of one enumerated act may not in a proper instance be applied to another.

It does not appear that the above mentioned errors could have affected the outcome of the trial and that prejudice, requiring a reversal, was a natural or likely consequence thereof. There was no miscarriage of justice.

For the foregoing reasons the judgments and orders are affirmed.

York, P. J., and White, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 27, 1941.