Filed 7/2/25  P. v. Streams CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KENYON STREAMS,<br><br>    Defendant and Appellant. | F088348<br><br>(Super. Ct. No. BF194541A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Charles R. Brehmer, Judge.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Ivan P. Marrs and Angelo S. Edralin, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury convicted defendant and appellant Kenyon Streams of pandering, and the trial court imposed a sentence of three years imprisonment. On appeal, defendant contends only that the trial court unconstitutionally and reversibly erred by giving the jury an instruction that defined the term "procure" in a manner that was overly broad and contrary to its ordinary meaning. We affirm.

## BACKGROUND

On April 28, 2023, an undercover Bakersfield police officer was working in an area of Bakersfield known for prostitution. The undercover officer noticed a silver SUV and a prostitute (B.S.) standing next to the SUV talking to the driver. The undercover officer observed that B.S. would stay near the SUV as she attempted to wave down passing cars. The undercover officer also noticed that the driver's window was rolled down and the SUV did not move. After about 90 minutes, B.S. got into the SUV and drove away. The undercover officer believed that the driver of the SUV had been providing protection for B.S.

A marked patrol vehicle stopped the SUV. Defendant was the driver of the SUV. In response to questions from the undercover officer, defendant disclosed that: he was a security guard and B.S. was his girlfriend; he had driven B.S. to the area from Fresno; he knew B.S. was engaging in prostitution but did not like or condone her doing so; he was making sure B.S. was good, looking out for her, providing security for her, and acting as her lookout; he was not being paid by B.S.; and he was just waiting on B.S. so that he could go home. Defendant was arrested for pandering.

On February 15, 2024, the Kern County District Attorney filed an amended information and charged defendant with: one count of pandering (Pen. Code,[1] § 266i; count 1); and one count of driving without a license (Veh. Code, § 12500, subd. (a); count 2).

---

[1] Unless otherwise noted, all further statutory references are to the Penal Code.

The trial court dismissed count 2 on May 30, 2024.

On June 3, 2024, trial commenced.

At the end of trial, the trial court instructed the jury with CALCRIM No. 1151, the standard instruction for the crime of pandering. In part, CALCRIM No. 1151 informed the jury that it did not matter whether B.S. was already a prostitute, and the prosecution must prove that: (1) defendant successfully *procured* B.S. to become a prostitute; and (2) defendant intended to influence B.S. to be a prostitute. However, without objection from defense counsel, the court granted the prosecution's request for a definition of the term "procure." In relevant part, the court instructed the jury as follows: "In the context of Pandering, the term 'procure(d)' is defined to mean 'assisting, inducing, persuading or encouraging' a person to engage in prostitution." The prosecutor argued that defendant was guilty of pandering because he encouraged B.S. by making it easier for her to engage in prostitution, and he assisted B.S. by transporting her from Fresno to engage in prostitution and by providing her with protection while she engaged in prostitution.

On June 6, 2024, the jury found defendant guilty on count 1.

On July 12, 2024, the trial court sentenced defendant to the low term of three years.

On July 15, 2024, defendant filed his notice of appeal.

## DISCUSSION

### INSTRUCTIONAL ERROR

#### A.     Parties' Arguments

Defendant argues that the trial court's definition of "procure" improperly included the concept of "assisting," which is inconsistent with the ordinary meaning of "procure." Defendant argues that Merriam-Webster's online dictionary lists three definitions of procure, all of which involve an affirmative effort on behalf of the person engaged in an activity. Similarly, all other conduct identified in section 266i involves affirmative and material conduct. However, "assisting" is so broad that it can include passive conduct

3.

that does not have an actual connection to prostitution. Defendant contends that the court should have either omitted the word "assist," used the phrase "materially assisted," or added additional language that required a causal connection between defendant's conduct and B.S.'s prostitution activities. Defendant argues that under any standard, the instruction was prejudicial because he only stood by and passively watched B.S., which is not sufficiently related to B.S.'s prostitution activities.

The People argue defendant has forfeited any instructional error by failing to object. Alternatively, the People argue in part that the trial court did not err because the instruction it provided to the jury was consistent with long-standing case law defining the term "procure" and legislative acquiescence in that definition.

### B. Legal Standards

#### 1. Instructional Error

Claims of instructional error are reviewed de novo. (*People v. Lewis* (2023) 14 Cal.5th 876, 900; *People v. Thomas* (2023) 14 Cal.5th 327, 382.) Thus, an " 'appellate court reviews the wording of a jury instruction de novo and assesses whether the instruction accurately states the law.' " (*Lewis*, at p. 900; quoting *People v. Mitchell* (2019) 7 Cal.5th 561, 579.) If a defendant contends that an instruction misstates the law, the reviewing court " 'must consider whether there is a reasonable likelihood that the trial court's instruction[] caused the jury to misapply the law in violation of the Constitution.' " (*Lewis*, at p. 900; quoting *Mitchell*, at p. 579.) If reasonably possible to do so, reviewing courts interpret an instruction in a manner that supports the judgment, as opposed to defeating it. (*People v. Mani* (2022) 74 Cal.App.5th 343, 377; *People v. Quinonez* (2020) 46 Cal.App.5th 457, 465.) " 'Jurors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions.' " (*Thomas*, at p. 382; quoting *People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

### 2. Section 266i – Pandering

Section 266i has six parts that define the crime of pandering. (§ 266i, subd. (a); *People v. Campbell* (2020) 51 Cal.App.5th 463, 485 (*Campbell*).) The six parts "do not state different offenses but merely define the different circumstances under which the crime of pandering may be committed." (*People v. Lax* (1971) 20 Cal.App.3d 481, 486; see *Campbell*, at p. 485.) As relevant here, a person is guilty of pandering if he "[p]rocures another person for the purpose of prostitution." (§ 266i, subd. (a)(1); accord, *Campbell*, at p. 485; *People v. Chatman* (2019) 30 Cal.App.5th 989, 993 (*Chatman*).) The term "procures" in the context of section 266i, subdivision (a)(1) means " 'assisting, inducing, persuading or encouraging' [another] to engage in prostitution." (*Campbell*, at p. 485; see *People v. Schultz* (1965) 238 Cal.App.2d 804, 812 (*Schultz*); *People v. Montgomery* (1941) 47 Cal.App.2d 1, 12 (*Montgomery*), disapproved on other grounds by *People v. Zambia* (2011) 51 Cal.4th 965, 981 (*Zambia*).) Pandering does not require monetary gain and thus, unlike the related crime of pimping under section 266h, does not involve a defendant deriving support from another person's prostitution. (*Campbell*, at p. 487; compare § 266i, subd. (a) with § 266h, subd. (a).) The pandering statute is designed to discourage prostitution " 'by discouraging persons other than the prostitute from augmenting and expanding a prostitute's operation, or increasing the supply of available prostitutes.' " (*Zambia*, at p. 973.)

### C. Analysis

#### 1. Forfeiture

There is no dispute that defense counsel failed to object to the trial court's definition of the term "procure." Generally, the failure to object to a jury instruction will forfeit the error. (*People v. Virgil* (2011) 51 Cal.4th 1210, 1260; *People v. Sexton* (2019) 37 Cal.App.5th 457, 466.) However, forfeiture will not be found when the defendant contends the instruction is an incorrect statement of the law. (*People v. Hudson* (2006) 38 Cal.4th 1002, 1011–1012; *Sexton*, at p. 466.) Here, defendant claims that the court's

definition of "procure" was incorrect. Therefore, the issue has not been forfeited. (*Hudson*, at pp. 1011–1012; *Sexton*, at p. 466.)

### 2. Improper Definition of "Procure"

Since the 1941 decision of *Montgomery*, it has been understood in California that the term "procure" for purposes of pandering means " 'assisting, inducing, persuading or encouraging' [another] to engage in prostitution." (*Campbell*, *supra*, 51 Cal.App.5th at p. 485; see *Schultz*, *supra*, 238 Cal.App.2d at p. 812; *Montgomery*, *supra*, 47 Cal.App.2d at p. 12.) Consistent with this understanding, the trial court instructed the jury that "procure" meant " 'assisting, inducing, persuading or encouraging' a person to engage in prostitution." The court's instruction/definition was clearly a correct statement of California law. (*Campbell*, at p. 485; *Schultz*, at p. 812; *Montgomery*, at p. 12.)

Defendant argues that the concept of assisting is not consistent with dictionary definitions of "procure."[2] However, that the trial court's definition may have been more expansive than a dictionary's definition does not mean the court's instruction was erroneous. For 84 years, California case law has defined the term "procure" for purposes of pandering as encompassing the actions of a defendant that assist another to engage in prostitution. As *Campbell* recognized, the Legislature has amended section 266i many times since *Montgomery* first defined "procure" in 1941, and since that definition was reiterated in 1965 by *Schultz*, yet in none of those amendments did the Legislature choose to address the term "procure." (*Campbell*, *supra*, 51 Cal.App.5th at p. 486, fn. 18.) When a statute has been construed by the courts, and the Legislature does not change that interpretation, generally it is presumed that the Legislature was aware of, and acquiesced

---

[2] Defendant cites the following definitions of "procure" from the Merriam-Webster online dictionary: (1) to get possession of something, or to obtain something by particular care and effort; (2) to bring about or achieve something by effort; and (3) to obtain someone to be employed for sex as for an individual or in a brothel. (See Merriam-Webster Dict. Online (2025) <https://www.merriam-webster.com/dictionary/procure> [as of July 2, 2025], archived at <https://perma.cc/YY73-MCZY>.)

in, the courts' construction. (*Zambia*, *supra*, 51 Cal.4th at p. 976; *People v. Bouzas* (1991) 53 Cal.3d 467, 475.) Because the Legislature has never addressed or changed the meaning of "procure" in section 266i, we are satisfied that the Legislature has acquiesced and accepted *Montgomery*'s 84-year-old definition. (See *Zambia*, at pp. 975–976 [finding acquiescence when § 266i had been amended six times without changing a 1973 statutory interpretation]; *Bouzas*, at p. 475 [finding acquiescence when a statute had been amended 10 times over a period of 73 years without altering a statutory interpretation]; *Campbell*, at p. 486, fn. 18.) Therefore, it is the definition of *Montgomery* that controls the meaning of the term "procure," not the cited dictionary's definitions.

Defendant argues the concept of "assisting" is so broad that it could capture conduct that was not actually in furtherance of prostitution and that additional clarifying language was necessary to demonstrate a causal connection between prostitution and procuring through assisting. We agree that "assisting" is a broad term that could encompass many actions by a defendant. However, the trial court's definition of "procure" did expressly include a causal relationship to prostitution. The instruction informed the jury that " 'procure(d)' " in part meant " 'assisting . . .' a person *to engage in prostitution*." (Italics added.) That is, "assisting" is tied directly to another's prostitution activities. Therefore, no additional clarifying instruction was necessary.

Finally, defendant argues that he merely sat in his truck and looked out for B.S. and that such passive activity should not be viewed as pandering. We cannot agree. Defendant's statements to the police demonstrated that he knew B.S. was attempting to engage in prostitution, he took B.S. from Fresno to Bakersfield so B.S. could attempt to engage in prostitution, and he was protecting B.S. by being present and looking out to make sure nothing happened to her while she attempted to engage in prostitution. Providing transportation and protection enables a prostitute like B.S. to ply her trade and expand into new areas, which is precisely what the pandering statute attempts to prevent. (*Zambia*, *supra*, 51 Cal.4th at p. 973; see *People v. Osuna* (1967) 251 Cal.App.2d 528,

7.

532.)  Moreover, case law has indicated that providing protection (*Chatman*, *supra*, 30 Cal.App.5th at p. 995) and transportation (*Osuna*, at p. 533) for a prostitute are actions that can constitute pandering.  Therefore, defendant's actions were neither outside *Montgomery*'s definition of "procure" nor so passive that they plainly fall outside the reach of section 266i.

## DISPOSITION

The judgment is affirmed.

DETJEN, J.

WE CONCUR:

LEVY, Acting P. J.

MEEHAN, J.